### STONE v. WRIGHT et al.
### No. 1079.

Circuit Court of Appeals, Tenth Circuit.

Jan. 17, 1935.

Rehearing Denied Feb. 25, 1935.

M. W. McKenzie, of Oklahoma City, Okl. (J. H. Everest, Robt. K. Everest, and E. E. Gibbens, all of Oklahoma City, Okl., on the brief), for appellant.

Paul E. Taliaferro, of Tulsa, Okl. (Edward Howell, of Oklahoma City, Okl., on the brief), for appellee C. H. Wright.

James S. Twyford, of Oklahoma City, Okl. (Solon W. Smith and William J. Crowe, both of Oklahoma City, Okl., on the brief), for appellees Twyford & Smith.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

LEWIS, Circuit Judge.

This is an appeal from an order directing Wright, receiver, to withhold from appellant $5,000 out of payments amounting to $10,000 which had come or was about to come into the hands of said receiver and arising from sales of certain shares of stock in the Sunray Oil Corporation. The facts on which the order was made are complicated. Those that seem to be material are as follows: On May 20, 1930, Reinhart & Donovan Company gave an oil and gas lease. On February 24, 1931, James S. Twyford and Solon W. Smith, composing the partnership Twyford & Smith, and A. D. Hudspeth claimed an undivided one-fourth interest in the lease. On that day they entered into a contract with Sunray Oil Company, a corporation, by which they agreed to sell to it and Sunray Company agreed to purchase said undivided one-fourth interest in said lease or leasehold estate, the sellers agreeing to warrant and defend title thereto subject to certain indebtedness set forth in said contract. Sunray Company on its part agreed to pay Twyford & Smith and Hudspeth therefor $25,000 in monthly payments represented by five notes and to deliver to them 15,000 shares of the capital stock of Sunray Oil Corporation, described as the parent company of Sunray Oil Company. The Sunray Oil Company further agreed that it would cause Sunray Oil Corporation to contract for the disposition of said 15,000 shares in accordance with a separate contract "of even date herewith, and until said Sunray Oil Corporation shall perform said agreement, second parties (evidently meaning Twyford & Smith and Hudspeth, named as first parties) shall have a vendor's lien upon the property herein agreed to be sold to Sunray, to secure the performance thereof."

On the same day, February 24, 1931, Sunray Oil Corporation entered into a contract with Twyford, Smith and Hudspeth in which the other contract with Sunray Company was referred to and the Sunray Corporation agreed to sell and dispose of the 15,000 shares of the capital stock of Sunray Oil Corporation at the rate of 500 shares per month at a price of $5 per share for the account of Twyford, Smith and Hudspeth, "or in event of its failure to dispose of same at such price in such minimum quantities to purchase and pay for same itself at such price, the first allotment to be sold or payment to be made 30 days from date of this contract." It was further agreed that the certificates for the 15,000 shares would be placed in a named bank in escrow. By their terms each contract was made binding on the heirs, personal representatives and assigns of each of the parties.

A few months after the execution of said contracts Sunray Oil Company and Sunray Oil Corporation, the first an Oklahoma corporation and the other a Delaware corporation, were placed in receivership in the court below, and appellee was appointed and qualified as receiver. Just before the receivership came on Hudspeth sold his interest in the contract of February 24, 1931, with Sunray Oil Corporation to appellant, Stone for $20,000, and as evidence thereof executed and delivered to Stone this instrument:

"Know All Men By These Presents:

"That Whereas, the undersigned, A. D. Hudspeth, is the owner of an undivided one-half interest, in a certain contract and the moneys flowing therefrom, dated the 24th day of February, 1931, by and between Sunray Oil Corporation, party of the first part, and A. D. Hudspeth, and Twyford & Smith, parties of the second part, copy of which is hereto attached and made a part hereof;

"Now, Therefore, In consideration of the payment to me of Twenty Thousand Dollars ($20,000.00), the receipt of which is hereby acknowledged, I do hereby sell, assign, transfer and set over unto Paul B. Stone, of Oklahoma City, Oklahoma, all of my right, title, equity and interest in and to the said contract, which I hereby certify to be an undivided one-half interest therein, and I hereby authorize and direct the First National Bank and Trust Company, the escrow named in said contract, to pay to said Paul B. Stone any and all proceeds arising or flowing therefrom, according to my interest therein, and do hereby covenant and

warrant to and with the said Paul Stone, that I have good right and lawful authority to sell and transfer the same, and that same is free and clear of all liens and adverse claims.

"Witness my hand at Oklahoma City, Oklahoma, this 19th day of October, 1931.
                    "A. D. Hudspeth.

"Witnesses to Signature:
  "J. H. Everest,
  "Inez F. Eubanks.

"We hereby certify that the interest of the said A. D. Hudspeth in the contract referred to in the above assignment, is an undivided one-half interest. Hudspeth has no interest in paragraph four (4) of contract. No warranties are hereby intended.
                    "Twyford & Smith,
                    "By Solon W. Smith."

Thereafter as the 15,000 shares of stock were being disposed of in accordance with said contract with the Sunray Oil Corporation the receipts therefrom were paid half and half by the receiver under order of the court to Twyford & Smith and Hudspeth until some time in July, 1932, when the receiver by petition informed the court that Western Paving Company was claiming a prior right of payment to it of $10,000 out of proceeds from the undivided one-fourth interest in the lease so sold under an assignment to it by Hudspeth; that said assignment, ante-dating the sale to Sunray Oil Company, was given to it by Hudspeth July 3, 1930, and was placed of record with the county clerk on November 29, 1930. The receiver served copy of his petition on Twyford & Smith, Hudspeth, and appellant Stone. The adverse claim of Western Paving Company was then submitted to the court, all the interested parties' were represented at the hearing, and the order appealed from was entered.

Before Stone purchased from Hudspeth and paid $20,000 for the assignment to him of all of Hudspeth's interest in the contract with the Sunray Corporation, his attorney saw and examined the two contracts of February 24, 1931, but testified that he did not know or hear of the assignment to Western Paving Company. Stone himself made some inquiries but learned nothing about the Western Paving Company claim. The order appealed from was made on a finding that "consideration for the purchase of said property having failed to the extent of the said assignment to the Western Paving Company, and the said assignment to the Western Paving Company being a lien or charge against said lease prior to the purchase thereof by the Sunray Oil Company and prior to the sale by Hudspeth to Stone," that Stone's interest was subject thereto; "and that the Sunray Oil Company should deduct from the interest of the said Paul B. Stone, and from the payments to be made to Paul B. Stone the sum of $5,000." Twyford & Smith conceded their liability and that $5,000 should be deducted as against them and applied on the Western Paving Company claim. They and Hudspeth had warranted good title to the one-fourth interest sold to Sunray Company. Stone resisted.

▇▇ It is contended that the assignment to Western Paving Company transferred an interest in real estate, which brought it under the recording statutes of Oklahoma, thus imputing notice to Stone. Okl. Stat. 1931, §§ 9672, 9689. We do not so construe the assignment from Hudspeth to Western Paving Company. It does not purport to convey an interest in real estate and cannot be so applied. It reads thus:

"A. D. Hudspeth, party of the first part, and the Western Paving Company, a corporation, party of the second part, hereby contract and agree as follows, to-wit:

"Whereas, first party is the lessee in a certain oil and gas lease executed on the 20th day of May, 1930, by the Reinhart & Donovan Company, a corporation, covering the following

"Blocks 3, 4 and 5 East Grand Avenue Addition to Oklahoma City, and

"Whereas, first party or assigns, intends to drill an oil well on Block 3 or Block 4 or the street between said Blocks in said addition,

"Now, Therefore, for a good and valuable consideration, the receipt of which is hereby acknowledged, the said first party does hereby set over and assign unto second party the sum of $10,000 to be paid to second party out of the production of seven-eighths of the oil from said leasehold interest. Provided, however, that the same shall not be paid and shall not be due until and after first party, or assigns, has been repaid out of the sale of oil produced from said well the actual cost of drilling and equipping said well into the tanks, as shown by certified statements of the cost of same, to be furnished by first party to second party, and,

"Provided further that said payment is to be paid only out of one-sixteenth the

proceeds of the sale of oil produced from the seven-eighths working interest in the well after the cost of same has first been returned to first party or assigns herein provided.

"In Witness Whereof, said first party has executed this instrument this 3rd day of July, 1930.

"A. D. Hudspeth, First Party."

However, we do construe it as creating an equitable lien on a fund to arise from the production of oil and gas to the extent and as limited therein. Okl. Stat. 1931, §§ 10939–10943; 3 Pomeroy's Equity Jurisprudence, §§ 1233–1237; Wright v. Ellison, 1 Wall. 16, 22, 17 L. Ed. 555; Trist v. Child, 21 Wall. 441, 447, 22 L. Ed. 623; Peugh v. Porter, 112 U. S. 737, 742, 5 S. Ct. 361, 28 L. Ed. 859; Ketchum v. St. Louis, 101 U. S. 306, 307, 316, 317, 25 L. Ed. 999; Walker v. Brown, 165 U. S. 654, 666, 17 S. Ct. 453, 41 L. Ed. 865. Okl. Stat. 1931, § 10943, provides:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

The assignment to Western Paving Company being an equitable lien on the proceeds from the sale of oil produced to the extent of one-sixteenth of seven-eighths of the working interest made it an "instrument affecting the real estate" from which the oil was taken, as used in said section 9689; and it was a "contract relating to real estate" as used in said section 9672. Thus it was a proper instrument or contract to be placed of public record under the Oklahoma statutes as provided in said sections, and having been so recorded notice of it was imputed to Stone. Said section 9689 of the Oklahoma Statutes reads thus:

"No deed, mortgage or other instrument affecting the real estate shall be received for record or recorded unless executed and acknowledged," etc.

The other section (9672) reads thus:

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease or other instrument relating to real estate, * * *

shall be valid as against third persons unless acknowledged and recorded as herein provided."

The assignment to Western Paving Company was acknowledged and recorded as the statute requires and permits. It related to and affected real estate because the fund was to come from mineral extracted from the real estate, and it affected that real estate in many respects. It results that Stone, through his agent and attorney, knew from examination of the two contracts of February 24, 1931, that proceeds from the sale of the 15,000 shares of stock were part of the purchase price, and he had constructive notice that the seller's interest in one-fourth of the lease purchased by Sunray Oil Company was encumbered with the claim of Western Paving Company.

The order appealed from is affirmed.