**UNITED STATES v. ADAMANT CO.**
et al. and four other cases.

No. 12961.

United States Court of Appeals,
Ninth Circuit.

May 23, 1952.

Rehearings Denied June 25, 1952.

Wm. Amory Underhill, Asst. Atty. Gen., Department of Justice, Walter S. Binns, U. S. Atty., Los Angeles, August Weymann, Special Attorney, Department of Justice,

Los Angeles, Cal., Roger P. Marquis, Fred W. Smith, Attorneys, Department of Justice, Washington, D. C., for appellant, United States.

Leland J. Allen, Los Angeles, Cal., for appellees, Adamant Co., Walter B. Scoville, Joe Seeple and Harry Wynn.

Williamson, Hoge & Curry, Fulton W. Hoge, and Edward M. Patterson, Los Angeles, Cal., for appellees, Herschel Bullen, Mary H. Bullen, J. C. Hayward and Mary S. Hayward.

John H. Rice and Julius A. Leetham, Los Angeles, Cal., for appellee, Reconstruction Finance Corporation, Assignee of Treasure Co.

Before MATHEWS and ORR, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

On September 28, 1942, the Government of the United States instituted a condemnation proceeding for the use of the Reconstruction Finance Corporation, acting in behalf of its subsidiary Defense Plant Corporation, to condemn certain real property in the City of Los Angeles, California. The Defense Plant Corporation by the Joint Resolution of June 30, 1945, 59 Stat. 310, 15 U.S.C.A. § 611 note, was merged with the Reconstruction Finance Corporation. The property consisting of a largely depleted oil field, known as the Playa Del Rey field, was taken for use as a natural gas reservoir. Many different parcels were within the area condemned. But this appeal involves only two contiguous tracts on which Treasure Company, to be referred to as "Treasure", owned oil and gas leases. The lease known as the Fletcher lease was on Lots 9, 10 and 11, Block 33, Tract 9809. The lease known as the Burns No. 1 lease, covered Lots 7, 8, 35 and 36, Block 33, Tract 9809.

In its Answer, Treasure claimed ownership of both leases. The defendant, Adamant Company, to be referred to as "Adamant", alleged ownership, through agreement with Treasure, of a 25 per cent participating interest in the Fletcher and the Burns No. 1 leases and in Treasure Well No. 8, which they alleged was located on both leaseholds.

Defendant Walter B. Scoville alleged an interest of 17 per cent in the Fletcher and Burns No. 1 leaseholds under the same agreement with Treasure. Defendant Harry Wynn claimed an ownership of 6 per cent in the Fletcher and Burns No. 1 leases and Treasure Well No. 8. Defendants Herschel Bullen and Mary H. Bullen alleged ownership of a 1 per cent interest in oil production from the lease as did the defendants J. C. Hayward and Mary S. Hayward, and they asked the court to determine the value of such interest. The owner of the land and the lessors, who were also parties to the action, settled with the Government during the course of the trial.

The trial, as to the named defendants, was held before Judge Campbell E. Beaumont and a Jury. On May 13, 1949, the jury rendered a verdict which recited:

"H-1-
W.I.—Being the total working interests in Treasure Company Well Treasure No. 8..........194,500.00"

Judgment on the verdict was entered by Judge Beaumont on the 11th day of July, 1949. The judgment recited that the verdict

"is hereby adopted by the Court as the fair market value of each of the aforesaid interests in the property taken and condemned by the plaintiff as of September 28, 1942."

It also recited that the Government was entitled to acquire the property for uses and purposes which are authorized by law, and that upon the filing of the plaintiff's Declaration of Taking, on December 26, 1942, and the deposit in the Registry of the court of the estimated just compensation, all the right, title and interest of any character whatsoever belonging to any and every person in and to the property were vested in and out of said persons and vested in the United States. The court retained jurisdiction for the purpose of adjudicating

"all adverse claims in or to any part of the award or awards of compensation herein made and the apportionment and distribution of said awards to the parties entitled thereto, and the right, if any, to interest on the awards."

Pursuant to this reservation of authority, Adamant, Walter B. Scoville, Harry Wynn, Joe Seeple, Herschel Bullen and Mary Bullen, his wife, and J. C. Hayward and Mary S. Hayward, instituted proceedings before the same court for the allocation of the funds. 40 U.S.C.A. § 258a.

On October 23, 1950, another of the judges of the United States District Court, Southern District of California, Central Division, Judge Harry C. Westover, who heard the matter apportioned the funds in this manner

"Reconstruction Finance Corporation is entitled to......51% of the sum of $191,700.00........ or $97,767.00
Adamant Company ............25% or 47,925.00
Walter B. Scoville............16% or 30,672.00
Harry Wynn ................. 6% or 11,502.00
H. Bullen and Mary H. Bullen .......................... 1% or 1,917.00
J. C. Hayward and Mary S. Hayward ................... 1% or 1,917.00

The amount apportioned was less than the award because the award had been depleted by a fee of $2800 allowed to David Head, who had been appointed receiver in a suit by Adamant and others against Treasure.

Additional facts will appear in the discussion to follow.

Four appeals are before this court:

The sole question presented by the Government's appeal is that the trial court should have found that the jury's verdict established the value of the lessee's interest in both the Fletcher lease and the Burns No. 1 lease.

The appeal of Reconstruction Finance Corporation raises the same question and, also, that, as there is pending an action in the State Court involving the rights of the lessees, the court should not have preempted its jurisdiction by determining their rights to portions of the award. They also question the method of apportioning the award.

The joint appeal of Adamant, Scoville, Seeple and Harry Wynn, to whom we shall refer as "the Adamant group", complains of a mathematical error in the trial court's apportioning of the award, in that the jury's award was based upon 80.6–1 per cent working interests. The award, they claim, should have been divided into 80.6 sums of money and allocated to the owners of the 1 per cents in accordance with the number of 1 per cents owned by each claimant. The trial court divided the jury's award into one hundred parts and made the division accordingly. The Adamant group also claim an equitable lien, which the trial court denied, on the money allocated to Reconstruction Finance Corporation for alleged royalties unpaid by Treasure. The amount so claimed is 47 per cent of $205,411.68, or $96,543.35, less the operating charge of $6,979.50, or a net equitable lien of $89,563.99.

Appellees, Bullen and Hayward, complain of the ruling that an agreement, referred to in the record as the "two-to-one agreement", was a personal agreement between the Haywards and Bullens and Scoville, and does not confer on them any rights to an additional award on that account. They also complain of the denial of an equitable lien upon the portion awarded to the lessee's successor, Reconstruction Finance Corporation.

## I.

### Preliminary Considerations

A proper perspective requires a statement of certain general principles applicable to condemnation proceedings.

The action was instituted under Section 258 et seq. of Title 40, U.S.C.A. now superseded by the new condemnation Rule 71A, Federal Rules of Civil Procedure, 28 U.S.C.A.

It is an elementary principle in the law of condemnation, whether exercised by the government of the United States or by state or public bodies, that all persons having any interest in the property be made parties defendant. Nichols On Eminent Domain, 3rd ed., 1950, Vol. 2, Secs. 5.1–5.3; 29 C.J.S., Eminent Domain, Sec. 236; United States v. Dunnington, 1892, 146 U.S. 338, 13 S.Ct. 79, 36 L.Ed. 996; Minnesota v. United States, 1939, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; United States v. Sunset Cemetery Co., 1942, 7 Cir., 132 F.2d 163, 164; State of Nebraska v. United States, 1947, 8 Cir., 164 F.2d 866, 868; California

Code of Civil Procedure, Secs. 387, 389, 1246.

No matter how large the number of persons who claim interests, where their rights are derivative and the award is for the whole estate, proceedings may be had to apportion the award. In such proceedings, the condemnor has no interest. Having secured a decree which vests title in him subject to the payment of the compensation, he is not interested in the manner in which the money he has paid for the entire title is apportioned between various claimants. Nichols, Op.Cit., Loc.Cit., Sec. 5.3(4), p. 51.

These considerations call for quick disposition of the appeal of the United States government. The judgment which vested title in the government was the one made by Judge Beaumont on July 11, 1949. The judgment apportioning the funds made by Judge Westover had nothing in it affecting the title of the United States. It is true that in the findings there is a statement that the award was only for the Fletcher lease on which the well was located, but that is not carried over into the judgment. And an appeal lies from a judgment, not from findings. 28 U.S.C. §§ 2106–2107. In order that a judgment be appealable at the behest of a party, the party must be aggrieved by it. 4 C.J.S., Appeal and Error, § 183; 2 Am.Jur., Appeal and Error, § 152; Farmers' Loan and Trust Co. v. Waterman, 1882, 106 U.S. 265, 1 S.Ct. 131, 27 L.Ed. 115; MacKinnon v. American Agar Co., 1934, 9 Cir., 73 F.2d 835, 837; In Re Schwartz, 1937, 2 Cir., 89 F.2d 172, 173.

Even assuming that the finding is erroneous and that the award covered both the Fletcher and the Burns No. 1 leases there is nothing in the judgment which affects adversely the interests of the United States.

## II.

### The Nature Of Oil Interests.

The other appeals require more elaborate treatment and a more complete statement of facts upon which the assertion of the various interests of the parties was based.

As the various claims to the apportionment of the award arise from certain interests carved out of the lessee's rights in the oil leases, it is well to consider the law of California on the subject. We advert to the fact that the high courts of California have stated that this branch of the law is of recent formulation and that only in the latest cases do we find a correct appraisal of the various interests of lessor or lessee in oil leases.

In brief summary, the courts of California *now* hold that participating royalty interests in oil production are "interests" in real property. The courts have applied to them, especially to the participating royalty interests issued by the lessee, the designation of "incorporeal hereditaments", going back to English common law of property for that characterization of property rights. Callahan v. Martin, 1935, 3 Cal.2d 110, 124–128, 43 P.2d 788, 101 A.L.R. 871; Standard Oil Co. v. J. P. Mills Organization, 1935, 3 Cal.2d 128, 134–135, 43 P.2d 797; Dabney-Johnston Oil Corporation v. Walden, 1935, 4 Cal.2d 637, 649–650, 52 P.2d 237; Dabney v. Edwards, 1935, 5 Cal.2d 1, 8–10, 53 P.2d 962, 103 A.L.R. 822; Schiffman v. Richfield Oil Co., 1937, 8 Cal.2d 211, 223–224, 64 P.2d 1081; Jameson Petroleum Co. v. State of California, 1936, 11 Cal.App.2d 677, 54 P.2d 776; Recovery Oil Co. v. Van Acker, 1947, 79 Cal. App.2d 639, 642–643, 180 P.2d 436; La Laguna Ranch Co. v. Dodge, 1941, 18 Cal.2d 132, 114 P.2d 351, 135 A.L.R. 546; Gavina v. Smith, 1944, 25 Cal.2d 501, 505, 154 P.2d 681; Gaylord D. Adsit, Oil Estates, 1936, 9 So.Cal. Law Rev., 299; Note, Oil and Gas; The Nature of the Lessee's Interest, 1937, 25 Cal.Law Rev. 230; Note, Oil and Gas Interests as "Securities", 1938, 26 Cal. Law Rev. 359; Note, Rights of Cotenants Inter Se as to Oil and Gas, Prairie Oil & Gas Co. v. Allen, 2 F.2d 566, 40 A.L.R. 1400; Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 205.

By its very nature, and because it carries with it the right to possess the land and explore for oil, the lessee's interest can be defined, measured with exactitude and severed. For this reason it is considered "an estate" in real property. However, no California case can be found which holds

that royalty interests issued by a lessee are *severable* in nature, so as to give the holder of one of them a distinct and definite measurable estate in the property under lease or the oil in place. See, Schiffman v. Richfield Oil Co., supra. Under California law, such interests are securities. If we apply to them, by analogy, the law applicable to stockholders, the conclusion is inevitable that, regardless of their character as *interests* in reality, their owners do not possess a definable and divisible estate in the property of the lessee. Cf. Rhode Island Trust Co. v. Doughton, 1926, 270 U.S. 69, 74–75, 46 S.Ct. 256, 70 L.Ed. 475; Klein v. Board of Supervisors, 1930, 282 U.S. 19, 23–24, 51 S.Ct. 15, 75 L.Ed. 140; First National Bank v. Maine, 1932, 284 U.S. 312, 330, 52 S.Ct. 174, 76 L.Ed. 313; Helvering v. O'Donnell, 1938, 303 U.S. 370, 371–372, 58 S.Ct. 619, 82 L.Ed. 903; Miller v. McColgan, 1941, 17 Cal.2d 432, 110 P.2d 419, 134 A.L.R. 1424.

### III.

### The Source and Nature of the Appellants' Interests

We now consider the source and nature of the interests of the three remaining appellants. In order to do this, it will be necessary to give in greater detail the facts on which the various findings of the trial judge were based, and on which he made the apportionment of the funds to the various claimants, each of whom seeks before us a different determination. As the inferences were drawn from documentary evidence or from testimony given at the valuation trial, we have greater freedom of forming our own conclusions than if they were drawn from the testimony of live witnesses. Equitable Life Assur. Soc. v. Irelan, 1941, 9 Cir., 123 F.2d 462, 464; Fleming v. Palmer, 1941, 1 Cir., 123 F.2d 749; Bowles v. Carnegie Steel Corporation, 1945, 7 Cir., 149 F.2d 545; Orvis v. Higgins, 1950, 2 Cir., 180 F.2d 537, 539; Smyth v. Barneson, 1950, 9 Cir., 181 F.2d 143, 144.

A. The Interest of Reconstruction Finance Corporation and the Adamant Group.

Reconstruction Finance Corporation is the assignee of Treasure under an assignment of rights to the award executed on March 2, 1950, by Treasure, which was duly recorded as required by the laws of the State of California. Reconstruction Finance Corporation claims no rights other than those derived through this assignment. It becomes necessary, therefore, to consider the position of Treasure in the transaction.

Treasure had two oil leases in the Del Rey Hills oil field. The Fletcher lease covered Lots 9, 10, and 11, Block 33, Tract 9809. The Burns No. 1 lease covered Lots 7, 8, 35, and 36, Block 33, Tract 9809. Both were duly recorded as required by the laws of California.

The leases were in the usual form of such leases in California, and leased certain property for a period of five years and thereafter for so long as oil in paying quantity might be found, including, among other rights, the right to enter upon the property, explore, and upon discovery, extract and remove therefrom oil, gas and other hydrocarbon substances as therein described.

Treasure began the drilling of an oil and gas well on Lot No. 9 of the Fletcher lease, which well, thereafter, became known as Treasure Well No. 8. Despite the finding of the trial court that the oil well was on the Fletcher lease only, the fact remains that no one except Reconstruction Finance Corporation, at the present time questions the fact that it was in reality drilled on both the Fletcher lease and Burns No. 1 lease.

After the drilling operations were begun, Treasure entered an agreement on April 5, 1938, with Adamant and Walter B. Scoville whereby certain money was obtained to partially finance the well which was ultimately completed. A dispute arose among the parties as to the meaning of the agreement, and action was filed in the Superior Court of the State of California, County of Los Angeles, entitled Walter B. Scoville, Joe Seeple, Harry Wynn and the Adamant Company, plaintiffs, vs. de Bretteville and Treasure Company, a corporation, defendants, being No. 441484.

On November 27, 1940, a judgment was entered in said case which adjudicated as follows:

"That the contract dated April 5, 1938, a copy of which is attached to

defendant's answer, and the addendum thereto, a copy of which is set forth in plaintiffs' complaint, were terminated as of January 31, 1939, save and except that the plaintiffs, The Adamant Company and Walter B. Scoville and their assigns, are entitled to retain their respective interests in said lease hereinbefore described upon which said well 'Treasure No. 8' is drilled, to wit, twenty-five per cent (25%) therein to The Adamant Company, a corporation, and nineteen per cent (19%) therein to Walter B. Scoville, both of which interests are subject to any assignment made and subject to their pro rata share of the completion, operating and maintenance costs and charges of said well."

On March 20, 1942, the judgment was affirmed by the District Court of Appeal of the State of California for the Fourth District. Scoville v. De Bretteville, 1942, 50 Cal.App.2d 622, 123 P.2d 616.

A petition for a hearing by the Supreme Court of California was denied on May 18, 1942. The judgment has now become final to all intents and purposes. It is the measure of the rights claimed by Adamant, Scoville, Seeple and Wynn.

The interests referred to in the judgment are evidenced by assignments of participating royalty interests reading in part as follows:

"That Treasure Company, * * * does hereby sell, assign, set over, transfer and convey to * * * one per cent * * * participating royalty interests in all oil, gas and other hydrocarbon substances produced, saved and sold from the following described premises * * *"

Adamant thus acquired twenty-five one (1%) per cent participating royalty interests, Scoville 19 and Wynn 2½. Scoville made an assignment to Herschel Bullen and Mary H. Bullen, as joint tenants, of one (1%) per cent participating royalty, and Scoville made a similar assignment of one (1%) per cent to J. C. Hayward, and Mary S. Hayward, as joint tenants.

Treasure, by resolution and with the consent of the Commissioner of Corporations of California, assigned to Wynn two and a half (2½%) per cent participating royalty interests in the leasehold. This interest was levied on by Treasure Company on a judgment for costs in the approximate sum of $484.00, and was sold to de Bretteville. The levy was not made as an interest in real estate, nor did it comply with the statutes of California relating to the sale of real property under execution. California Code of Civil Procedure, Secs. 687, 692 (3), 700.

An application by Treasure to issue to Wynn an additional two and a half (2½%) per cent interest for services rendered was granted by the Commissioner of Corporations, but the company did not make the assignment within the time provided in the permit. There being sufficient consideration to support the assignment, the trial judge treated it as though it had been completed.

A similar permit was issued by the Commissioner of Corporations permitting the transfer by Scoville to Wynn of an additional one (1%) per cent participating royalty interest in the leasehold. The actual assignment was not made, but the court treated it as a valid transfer for all purposes, there being ample consideration for it. Two actions are pending, one in the United States District Court of Southern California, Central Division, by Adamant Company and Walter B. Scoville against Treasure and de Bretteville for an accounting. There is also pending in the Superior Court of the State of California an action between Wynn and Treasure and de Bretteville.

B. The Scoville-Hayward-Bullen Agreement.

Scoville entered into an agreement with the Bullens and Haywards whereby they contributed $2500 per couple to be used in completing the well. Scoville agreed to assign to each couple from his royalty interests a one (1) per cent interest. He also agreed that the money so invested was to be repaid two to one out of the first fifteen per cent of gross production from the well. This agreement has been referred to as the "Two-to-One Agreement". While

the plan for obtaining this money had the approval of the Adamant and Treasure companies, neither was a party to the agreement. The trial court held that the agreement was a personal undertaking by Scoville which did not entitle the parties to any share of the award.

### C. The Drill Site.

Certain other facts should be adverted to bearing upon the question whether the well was on the Fletcher lease or on the Fletcher and Burns No. 1 leases. The agreement of April 5, 1938, between Treasure, Adamant and Walter B. Scoville indicates the intention of the parties that the two leases should be combined as a drill site. The Preamble contains the following recitals:

"Whereas, First Party has acquired on Oil and Gas Sublease from Robert S. Burns and Sarane Otis Burns, his wife, covering Lots Seven (7), Eight (8), Thirty-five (35) and Thirty-six (36) in the above described Block and Tract, which said Sublease it is proposed to combine with the above mentioned Fletcher lease into one drillsite; and * * *

"Whereas, First Party now desires to complete said well on the Fletcher lease and the Burns No. 1 lease and to drill a second well on Burns No. 2 lease, and its third well on Burns No. 3 lease * * *."

And in reciting the nature of the participating royalties of Adamant and Scoville the lease states:

"(a) To Second Party, a twenty-five per cent (25%) participating royalty interest on all of the above described leases:

"(b) To Third Party a participating royalty interest of nineteen per cent (19%) to the Fletcher and Burns No. 1 lease if the well is completed for less than one thousand (1000) barrels * * *."

As Treasure was the owner of both leases, these recitals evidence an intention to allow the participants to share in the production from the combined leases.

The Answer of the defendants Adamant, Scoville and Wynn, the chief claimants next to the Reconstruction Finance Corporation to the award, contained the following statement:

"That Treasure Well No. 8 is located upon the drill-site composed of the two above leaseholds."

The Answer of Treasure alleges that Well No. 1 was built on the Fletcher lease only. But there is nothing in the Answer which conflicts with the statement in the Preamble of their own contract that while *physically* that may have been the case, in truth, the drill-site consisted of both leases. On the basis of the facts substantially as outlined, the trial court found the respective interests of the parties to be in the percentages already stated and ordered the award distributed in accordance with these percentages. The court declined to impress the funds allocated to the Reconstruction Finance Corporation as assignee of Treasure with an equitable lien for moneys alleged to have been due by reason of failure to pay over accumulated dividends to Adamant and the moneys promised in the Scoville-Bullen-Hayward agreement.

### IV.

#### Equitable Liens.

We consider the outline of facts just given in the light of principles of law already alluded to in order to determine the correctness of the adjudication as to the three remaining appellants.

We dispose of the claim arising from the "Two-to-One Agreement" by stating that the trial court was correct in holding it to be a personal undertaking on the part of Scoville which gave the Bullens and Haywards no interest in the well or production from it. In this respect, the contract was akin to the contract under consideration in Helvering v. O'Donnell, 1938, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903. There, O'Donnell had owned one-third of the capital stock of the San Gabriel Petroleum Company. On January 9, 1918, he sold the stock to the Petroleum Midway Company, Ltd. As consideration, the Midway Company agreed to pay to him one-third of the net profits from the development and operation of the oil and gas

properties then owned by the San Gabriel Company and which the Midway Company agreed to acquire. That acquisition was made. The properties acquired were developed and operated and one-third of the profits thus derived were paid to O'Donnell to August 4, 1926. O'Donnell claimed deduction for depletion. And the question arose whether he had an interest "in the oil and gas in place". Mr. Chief Justice Hughes answered in the negative:

> "The agreement to pay respondent one-third of the net profits derived from the development and operation of the properties was a personal covenant and did not purport to grant respondent an interest in the properties themselves. If there were no net profits, nothing would be payable to him. No trust was declared by which respondent could claim an equitable interest in the *res*." Helvering v. O'Donnell, 1938, 303 U.S. 370, 372, 58 S.Ct. 619, 620, 82 L.Ed. 903.

It will be noted that the payment for the stock was to be made out of property to be acquired and developed. So it is fair to infer that the stock was used for the purpose of acquiring the additional field and developing it. Nonetheless, the Court held that the undertaking was a personal one to repay money and carried no claim of an equitable interest in the property thus acquired and developed.[1]

The judgment in the State Court determined that Adamant, Scoville and Wynn, "[had] no right of management of the undertaking", Scoville v. de Bretteville, 1942, 50 Cal.App.2d 622, 632, 123 P.2d 616, 621. This adjudication fixed the measure of their rights as they existed at the time the letter to the Bullens and Haywards was written.

Cases in which an equitable lien against a person's interest have been upheld, are those arising under contracts which contain (a) a specific transfer of a person's interest in royalties, and (b) a distinct direction to the corporation to reimburse out of certain proceeds. In this category are Stone v. Wright, 1935, 10 Cir., 75 F.2d 457 and Phillips Petroleum Co. v. Gable, 1942, 10 Cir., 128 F.2d 943.

The agreement in the case before us does not have these characteristics. More, the cases just referred to were decided under an Oklahoma statute which, with an eye to the transfer of oil interests, recognizes the doctrine of potential possession, and which reads:

> "An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest." Oklahoma Stat. 1931, Sec. 10943, 42 O.S. 1951 § 8.

Some California cases gave sanction to a similar doctrine. Merrill v. California Petroleum Corp., 1930, 105 Cal.App. 737, 288 P. 721; Black v. Solano Co., 1931, 114 Cal.App. 170, 299 P. 843; Western Oil and

---

1. We do not believe that the doctrine of the "grubstake cases" applies. In such cases a person finances a search for minerals or oils. On refusal of the recipient to recognize the interest of the lender, the courts declare the grubstaker equitable owner of an interest in the mining location or oil discovered, usually a partner's half interest. Austin v. Hallmark Oil Co., 1943, 21 Cal.2d 718, 726, 134 P. 2d 777. Here the leasehold was owned by Treasure, the money was used for continuation of drilling. Scoville, as the holder of royalty interests issued by the lessee, was as much interested in continuing drilling until oil was discovered as the lessee was. And, the undertaking towards the Bullens and Haywards was his personal promise to repay them at some future time.

The agreement to transfer a one (1%) per cent interest was likewise a personal undertaking to do something in the future. It did not make the Bullens and Haywards holders of participating interests. Even persons holding priority rights or warrants for stock are not considered stockholders. See, Eisner v. Macomber, 1920, 252 U.S. 189, 208–212, 40 S.Ct. 189, 64 L.Ed. 521; Miles v. Safe Deposit & Trust Company, 1922, 259 U.S. 247, 252–254, 42 S.Ct. 483, 66 L. Ed. 923; Helvering v. Southwest Consolidated Corp., 1942, 315 U.S. 194, 198–199, 62 S.Ct. 546, 86 L.Ed. 789.

Refining Co. v. Venago Oil Corp., 1933, 218 Cal. 733, 24 P.2d 971, 88 A.L.R. 1271. But these cases arose prior to the adoption of the present Section 1725 of the California Civil Code in 1931. And, the Supreme Court of California has stated that the effect of the adoption of this Section is to abolish the doctrine of potential possession in California. Callahan v. Martin, 1935, 3 Cal.2d 110, 128, 43 P.2d 788, 101 A.L.R. 871.

What has just been said applies with equal force to the contention of the appellants Adamant, Seeple, Scoville and Wynn, that they be given an equitable lien on the share of the award made to Reconstruction Finance Corporation, as successor to Treasure. Because the agreement between them and Treasure Company was ambiguous, disagreement resulted and litigation was resorted to. The agreement was merged into the judgment. Indeed, the judgment stated that the agreement was terminated on January 31, 1939. The judgment declared that Treasure was the owner of oil and gas leases, and that Adamant, Scoville and Wynn had no managerial rights. It distinctly repudiated charges of mismanagement and misappropriation of funds, discharged the receiver, and approved the continued management by Treasure.

An equitable lien is a creature of equity. It is the right to have a fund or specific property applied to the payment of a particular debt. It is based on the equitable doctrine of unjust enrichment. 53 C.J.S., Liens, § 4; 33 Am.Jur., Liens, Sec. 18. But there must be something more than the mere fact that a contract has been breached before a lien is impressed upon a specific fund. Jamison Coal & Coke Co. v. Goltra, 1944, 8 Cir., 143 F.2d 889, 893–894, 154 A.L.R. 1191. The limitations of the doctrine are stated by the Court of Appeals for the Sixth Circuit in Cleveland Clinic Foundation v. Humphrys, 1938, 6 Cir., 97 F.2d 849, 850, 856, 121 A.L.R. 163:

"The doctrine of 'equitable lien' is akin to that of subrogation. Both are expressed in 'equality is equity' and apply in cases where the law denies relief and where to follow it would

work injustice. The remedy has its limits and is not alone controlled by the conscience of the judge.

"In the absence of an express contract, a lien based upon the fundamental maxims of equity may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing. One may by manifest intent and agreement create a security for the discharge of his obligation and another discharging such an obligation, if not a volunteer, has the right to look to the fund for repayment."

Here the claim of equitable lien is sought to be asserted merely on the basis that the Adamant group had not been paid any royalty. The decision of the state court definitely determined that no element of fraud existed in the management by Adamant. So we believe that even if it be assumed that the doctrine of Stone v. Wright, supra, and Phillips Petroleum Co. v. Gable, supra, applies to California, the conditions which would call for the impression of a lien for the Bullen and Hayward group and the Adamant group do not exist. If the duty to pay royalties existed and funds were available, it was the duty of the Adamant group to press their demands. The institution of the action against them, and the grounds which were urged for their attempt to take the management of the property away from Treasure indicate doubt as to the meaning of the contract. When a contract is of doubtful meaning, and requires a court interpretation, the conditions are absent which call for the application to it of a rigid equitable doctrine. The Adamant group were just as much responsible for the ambiguity which the court found in the contract as was Treasure.

The litigation only terminated on May 18, 1942. The present action was instituted on September 28, 1942. The first assertion of a claim of equitable lien came in the Answer of the Adamant group filed on December 8, 1943. It would be unconscionable to penalize either Treasure or its successor, Reconstruction Finance Corpora-

tion, for the failure of Treasure to live up to a promise to pay royalties which arose under a contract ambiguous in its terms, the meaning of which was not determined until May 18, 1942, upon a one-sided showing that dividends might be available. The more so as there are now pending two actions, one in the state courts of California, seeking to determine the rights between Wynn and Treasure and G. de Bretteville, and another action in the United States District Court for the Southern District of California, instituted by the Adamant group to secure an accounting from Treasure and G. de Bretteville.

## V.

The Formula Adopted by the Court.

There is no merit to the contention that in apportioning the award, the court should have adopted the formula 80.6 as representing the interests of those holding under the lessee and divided it accordingly. It is true that the interests of the landlord and lessor and those of the lessee are carved out of the same estate, and that on a theoretical basis, the return from the operation would be divided on a basis of 80.6 and 19.4. The jury made an award of $194,500 for the value of the lessee's interest from which the participating interests were carved out. The Government settled with the owners. And the jury were not called upon to determine the value of the landlord's reserved royalty.

■ So we are confronted with this situation: We have an award which is made *for all* the estate which the lessee and those claiming under him derivatively and which represents the fair market value of the property as of the date of the Government's taking. And so, the court proceeded to apportion it according to the percentages, which, by agreement and the judgment of the state courts, the lessee and those claiming under him had. Of necessity, it treated it as a whole without regard to the percentage which this represents if related to the lessor' estate. The trial judge adopted the figure 100 as representing the whole of the lessee's interest, and this he proceeded to divide on a percentage basis according to the percent-

ages the parties themselves, *by contract and a state court by decree,* had established. No mathematical abstractions should stand in the way of such pragmatic treatment.

■ Equally without merit is the contention of the Reconstruction Finance Corporation that because seven lots were included in the Fletcher lease and the Burns No. 1 lease, and Judge Westover has held that the award was to apply only to the Fletcher lease of three lots, the award of the Adamant group should be reduced accordingly so that Adamant would receive 25% of $\frac{3}{7}$ of the net balance of the award, and Scoville 19% of $\frac{3}{7}$ of the net balance of the award.

It has already been shown that the record indicates that the parties had treated the two leases as one unit. Our own conclusion from the same facts, which were before the trial judge, would be that there is nothing in the testimony before the jury or the jury's verdict to indicate that only the Fletcher lease was covered by the award.

As already stated, the judgment rendered by Judge Beaumont vested the title in the government as of the date of taking, October 26, 1942. No one has contested the government's right to the absolute ownership or possession of the entire leasehold. The judgment of condemnation has long since become final. No appeal from it lies now. And the statute of limitation has long run against any attempt to dispute the government's possession. 28 U.S.C. § 2401(a).

We do not believe that speculation should be resorted to at this late hour to segmentize by mathematical formulas the award which the jury made for the whole estate which the government acquired from the lessee and those claiming under him. The findings of the trial judge to the contrary may, in view of what has just been said, be entirely disregarded, and, as already stated, insofar as the government is concerned, they not having been transmuted into any judgment, they do not present a ground for appeal. They are equally harmless as a basis for dividing the award in a manner other than the trial judge did.

## VI.

### The Effect of Other Pending Litigation.

It is evident from what has gone before that on the main questions involved in these appeals the District Court was right. Two factors stand, however, in the way of affirming the judgment unconditionally. It is evident, of course, that so far as the appeal of the United States Government is concerned, it must be dismissed for the reason that there is nothing in the judgment distributing the award which affects the rights of the United States adversely. The judgment, so far as it determines the interest of the Reconstruction Finance Corporation, as successor to Treasure, is also correct. It assigns a portion of the award corresponding to the interests of the lessee of the property (Callahan v. Martin, 1935, 3 Cal.2d 110, 124–128, 43 P.2d. 788, 101 A.L.R. 871; and cases cited in Part 2 of this opinion) interests which the California decisions hold to be an estate in real property capable of distinct measurement and which carries with it the right to occupy the property and explore for oil and extract oil from it. Gavina v. Smith, 1944, 25 Cal.2d 501, 505, 154 P.2d 681; Yearout v. American Pipe & Steel Corp., 1946, 74 Cal.App.2d 139, 141–142, 168 P.2d 174; Epstein v. Zahloute, 1950, 99 Cal.App.2d 738, 739, 222 P.2d 318. The rights of Reconstruction Finance Corporation cannot be affected by other pending litigation. It holds nothing but an assignment of the portion of the award due Treasure.

 The other claimants hold merely participating royalties, which while defined by the same California courts as "interest in real property", are not capable of division and amount, at most, to

> "an undivided interest in the oil to be produced under a specific lease or from a specific well during the term of the lease, or an interest in the proceeds of such oil." Schiffman v. Richfield Oil. Co., 1937, 8 Cal.2d 211, 227, 64 P.2d 1081, 1086.

Courts will protect the royalty assignee's interest in the proceeds, because as the court said in the same case, "he has a claim for his share of the proceeds." Schiffman v. Richfield Oil Co., supra, 8 Cal.2d at page 228, 64 P.2d 1089. But the right to the share is not absolute. It is relative. The cost of production must be deducted and the rights of creditors considered. So, a court can no more divide the proceeds of the sale of a leaseholder's interest among the lessee's participating royalty holders, than it could divide the proceeds among the stockholders of a corporation prior to dissolution.

 The controversy between the Adamant group and those claiming under them are, even now, the subject of two actions, one pending in the Superior Court, and another pending in the United States District Court for the Southern District of California. The outcome of those actions will determine whether these claimants are entitled to receive the percentages of this award corresponding to their interests. They may be entitled to more or to less. But until those actions are actually determined, no court can order the payment of these awards without inviting further litigation. We need not concern ourselves with the problem of preempting jurisdiction. As the action before this court relating to the distribution of funds is a personal action, both the federal and the state court have jurisdiction. Despite the right of federal courts to deal concurrently with personal rights, as a matter of comity, when the state court has acquired jurisdiction there should be no interference by the federal courts until the state action has been disposed of. Kline v. Burke Construction Co., 1922, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; Toucey v. New York Life Ins. Co., 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100; Brillhart v. Excess Ins. Co., 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Mandeville v. Canterbury, 1943, 318 U.S. 47, 63 S.Ct. 472, 87 L.Ed. 605; Propper v. Clark, 1949, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480; General Exporting Co. v. Star Transfer Line, 1943, 6 Cir., 136 F.2d 329.

Of necessity, the action pending in the state court as well as the other federal ac-

tion, will determine the rights of the claimants with reference not only to the award, but also as to all the other assets which it is claimed Treasure has not accounted for. If, on accounting and liquidation, the claimants are entitled to more than the share of the award, the awards can be applied to the satisfaction of the claims. If they are entitled to less, the court will have to determine to whom the surplus is to go. Whatever be the actual result, it is evident that the determination of rights in the present action will affect rights at issue in the others and vice-versa. Satisfied as we are that the court reached a correct determination of the proportions in which, other things being equal, the award should be distributed, it would serve no useful purpose to reverse the adjudication as to the appellants other than Reconstruction Finance Corporation on the narrow ground that the interests of the claimants are not severable. Whether they are or not, the court, having determined properly how the assertion of ownership shall be measured in terms of the award, it would best serve the interests of justice to stay the enforcement of that portion of the judgment relating to the appellants other than Reconstruction Finance Corporation and which orders the amount awarded distributed and directs the clerk to pay it to them until the other cases are determined, rather than to relitigate the matter.

The cause is, therefore, remanded to the trial court with direction to stay the execution and enforcement of the judgment as to the appellants other than Reconstruction Finance Corporation (as set forth in Paragraphs II and III of the judgment) until the actions pending in the state and federal court are determined, or the parties settle them and agree upon a manner of division of the award. The trial court will retain power to hold such further hearings as may be called for by the determination or settlement of the pending actions. In all other respects, the judgment stands affirmed.[2]

2. We did not treat specifically the claim of the Bullens and Haywards that their recovery should be based on their proportionate share of the entire amount of the award, $194,500, rather than on the balance of $191,700, remaining after deducting the $2800 fee allowed to David B. Head as receiver in the suit by Adamant and other against Treasure. All the claims are derivative through the Adamant group. The litigation may affect the amounts to be received by all others than Reconstruction Finance Corporation. The court could easily charge the *corpus* of the estate, from which the interests were carved, with the fee, although the Bullens and Haywards were not parties to any stipulation to that effect.