[Civ. No. 23319.   Second Dist., Div. Three.   Mar. 6, 1959.]

CATHERINE KENNY, Appellant, v. TRUST OIL COMPANY (a Corporation), Respondent.

Erskine, Erskine & Tulley and Ernest M. Clark, Jr., for Appellant.

Julius A. Leetham for Respondent.

SHINN, P. J.—The present action was instituted by Catherine Kenny as assignee of Morse Erskine, Morse Erskine II and J. B. Tulley, lawyers and copartners, for the recovery of a reasonable compensation for legal services rendered by the attorneys to defendants Trust Oil Company, Treasure Company, Samarkand Oil Company and Empire Oil Company at the instance and request of the defendants. The first cause of action of the complaint alleged that the defendants became indebted to the attorneys for the reasonable value of legal services in the sum of $15,000, no part of which had been paid. In a second cause of action, it was alleged that the defendants became indebted to the attorneys in the sum of $54.64 on account of moneys advanced for defendants at their instance and request, no part of which had been paid. Defendants answered specifically denying any indebtedness to the attorneys for services rendered or money advanced. Trust Oil Company filed a cross-complaint against the attorneys which, after several amendments, was dismissed. In a trial to the court, judgment of nonsuit was granted in favor of Treasure Company, Samarkand Oil Company and Empire Oil Company. At the conclusion of the trial and the receipt of evidence on behalf of Trust Oil Company judgment was rendered that plaintiff take nothing against said defendant and that it recover its costs of suit. Plaintiff appeals only from that portion of the judgment which denied recovery against Trust Oil Company.

The contentions on the appeal are that there was insufficient evidence to justify the findings which form the basis of

the judgment and that the findings do not support the judgment. Those findings are set out in the margin.[1]

■ Proper and sufficient findings would have been that the attorneys did not render any legal services nor advance any money at the special instance or request of Trust Oil Company. Findings in this form would have meant that the company did not hire the attorneys and that if services were rendered to the company they were rendered under circumstances which imposed no duty upon the company to pay for them. But instead of negativing the allegations of the complaint with respect to the ultimate facts, which would have furnished the best support for the judgment, the findings evade those facts and do not effectively determine the issue of defendant's liability. There is nothing uncommon in this situation. We have repeatedly commented upon the fact that attorneys consistently ignore the settled rule that there should be findings upon the ultimate facts, namely, the facts that are determinative of the controversy, and that evidentiary findings are not only surplusage but frequently cause confusion.

The finding "that legal services of substantial value were rendered to the defendant Trust Oil Company, a corporation, by the law firm" would imply an obligation on the part of

[1] "III. That prior to the institution of the present lawsuit, one hundred shares of the stock of the defendant Trust Oil Company, a corporation, was transferred to the name of Herbert W. Erskine, now deceased, and said stock still exists in the name of Herbert W. Erskine, now deceased, and is presently still in escrow under an order of the California Commissioner of Corporations. That said one hundred shares of stock constituted and presently constitute one-tenth of the outstanding corporate stock of the defendant Trust Oil Company, a corporation.

"IV. That the aforesaid Herbert W. Erskine, now deceased, at the time of the institution of the present lawsuit, and also at the time of the alleged rendition of services and expenditures of costs was deceased, but at the time the aforesaid one hundred shares of the defendant Trust Oil Company, a corporation, stock was transferred to him, was acting as attorney for the defendant Trust Oil Company, a corporation, and as a member of the partnership constituting plaintiff's assignors. Upon the death of the said Herbert W. Erskine, said one hundred shares of the defendant Trust Oil Company, a corporation, stock devolved to the legal and testamentary heir or heirs of the said Herbert W. Erskine, deceased. That certain of plaintiff's assignors, to wit, Morse Erskine, Morse Erskine 2d, are the brother and son, respectively, of Herbert W. Erskine, deceased.

"V. That legal services of substantial value were rendered to the defendant Trust Oil Company, a corporation, by the law firm constituting plaintiff's assignors, but that the consideration for those legal services was the effort of said plaintiff's assignors to improve the value of the shares of stock standing in the name of Herbert W. Erskine.

"VI. That the defendant Trust Oil Company, a corporation, did not engage the legal services of or authorize the expenditure of the subject costs for and on its behalf by plaintiff's assignors."

the company to pay for the services. The finding "that the defendant Trust Oil Company, a corporation, did not engage the legal services of . . . plaintiff's assignors" does not negative the inference that the company accepted and received the benefit of the services. It was clearly established by the evidence that the attorneys did render services of substantial value.

The finding that the company did not engage the legal services of the attorneys is without support in the evidence. Conferences between de Bretteville and the attorneys were held during December 1952 and continued through July 1953. In January 1953, the attorneys were employed to collect a claim against Southern California Gas Company of $336,-482.80 for wet gas delivered. They were to receive 20 per cent of sums recovered. They were consulted, gave legal opinions and rendered other services at the request of de Bretteville through April 1953, for which they made charges. On February 26th, the firm billed the company for expenses in the sum of $50.14 and requested payment of $500 on account of expenses and attorney's fees. De Bretteville's reply did not admit or deny an indebtedness for legal services. However, the company paid nothing and the matter of attorney's fees was not discussed in the later correspondence.

In the light of the fact that the company sought the legal services of the Erskine firm and that the finding to the contrary is without support in the evidence, the crucial question was whether there was a mutual understanding, express or implied, that the attorneys would not be paid for the services.

It will be helpful to outline something more of the background of the dealings of the company with the lawyers. Herbert W. Erskine was a member of the firm at the time he was appointed as a judge of the United States District Court in 1949. For an undisclosed time prior thereto, and as a member of the firm, he had rendered legal services to the company. The services were not rendered gratuitously; payment of compensation for the services was deferred and 100 shares of the company's stock were issued to him in 1951 as partial compensation. He owned these shares at the time of his death in 1951. Morse Erskine was a brother of Herbert W. Erskine and Morse Erskine 2d was Herbert's son. So far as disclosed by the record, the services rendered by the firm after Herbert left it were, in general, a continuation of

those which had been rendered in the past by Herbert. The company had a multitude of problems of long standing and was involved in much litigation. To say that its legal problems were numerous, complex and difficult, would be well within the facts. As the owner of a controlling interest in Treasure Oil Company, Trust was vitally interested in saving as much as possible of its property in the Del Rey oil field which had been condemned by the United States Government. Some features of Trust's difficulties were described in *Wynn* v. *Treasure Co.*, 146 Cal.App.2d 69 [303 P.2d 1067] and in *United States* v. *Adamant Co.*, 197 F.2d 1, and other matters were in controversy between Trust and Southern California Gas Company and Union Oil Company arising out of a contract that had been entered into May 31, 1949, between Trust, Reconstruction Finance Corporation, successor to Defense Plant Corporation, and the Gas Company. Although Trust was represented in litigation by attorneys employed after the services of the Erskine firm were terminated, many of the facets of the controversies were the subject of the services of the Erskine firm up to the time when they were superseded by other counsel. The company does not deny that the attorneys rendered substantial services. It only contends that they were rendered with an understanding that they were to be gratuitous. But the court did not so find.

The obvious question is—why did not the court make such a finding? Undoubtedly, the correct answer is that the court merely signed the findings as they were prepared by defendant's attorney, assuming they would support the judgment. The further question—why did not the attorney incorporate a finding that the services of the attorneys were rendered gratuitously? The answer to this question is not so clear.

Charges were made for services between December 1952 and April 1953. We find that as late as June 9 and 12, 1953, de Bretteville was seeking legal advice by letters addressed to Morse Erskine, to which Mr. Erskine replied, stating that one of the matters would involve considerable time and would only increase de Bretteville's obligation for attorney's fees. He suggested that another attorney who had been employed by the company might be prepared to answer the question. On June 16th, de Bretteville wrote in part: "Therefore, I want to make it clear to you that at no time have we ever authorized you to be our attorney, we don't need attorneys. We need finances. We need to find a way out of our diffi-

culties." And following this unwarranted statement with respect to attorneys, the letter contained an offer to Mr. Erskine to pay him a brokerage fee for finding someone to assist the company financially. De Bretteville had previously written that the 100 shares of stock was a present to Herbert W. Erskine (which was contrary to the proven fact) and on August 24th, he requested of Erskine 2d the return of the stock. His letters also implied that the attorneys should cooperate to enhance the value of the stock. This appears to have been the inception of the theory that the attorneys had been working for themselves and not the company.

It is evident that de Bretteville's theory of nonliability was carried into the findings. Finding Number V reads in part "but that the consideration for these legal services was the effort of said plaintiff's assignors to improve the value of the shares of stock standing in the name of Herbert W. Erskine." We have read and reread this clause and are unable to construe it as a finding that the services were rendered gratuitously. Although we have consistently observed the rule that findings should be given the reasonable construction that tends most strongly to give support to the judgment, we are unable to construe the quoted clause as a finding that the services of the attorneys were rendered pursuant to a mutual understanding that they would impose upon the company no obligation to pay for them. It is not a finding that either the attorneys or the company had such an understanding. There was another finding that the 100 shares of stock "devolved to the legal and testamentary heir or heirs of the said Herbert W. Erskine, deceased. That certain of plaintiff's assignors, to wit, Morse Erskine, Morse Erskine 2d, are the brother and son, respectively, of Herbert W. Erskine, deceased." This finding is apparently an attempt to place the two Erskines in the position of having some ownership in the stock as a basis for an implication that they were rendering their services to themselves and not to the company. The unquestioned fact was that the stock was owned by the widow of Herbert W. Erskine and, of course, there was a third partner, J. Benton Tulley, who had not even a remote interest in the stock, or its ownership. It was also found "Herbert W. Erskine . . . at the time the aforesaid one hundred shares of the defendant Trust Oil Company, a corporation, stock was transferred to him, [Erskine] was acting as attorney for the defendant Trust Oil Company, a corporation, and as a

member of the partnership constituting plaintiff's assignors.'' The finding implies that the stock was issued to a member of the partnership for legal services rendered and became the property of the partnership. But this finding, like the one last discussed, was contrary to the facts. Herbert W. Erskine became a United States District Judge in 1949. The stock was issued to him in 1951 as partial consideration for legal services prior to his accession to the bench.

The court was not requested to find that the services were gratuitous. It was the theory of the attorney who prepared the findings that from the fact that the value of the Erskine stock would have been enhanced by the services of the attorneys, and upon the supposition that they would profit thereby in some manner, it would follow that the services were rendered gratuitously.

If the attorneys had succeeded in extricating the company from some of its embarrassing legal problems to the material advantage of the company it would have improved the value of the Erskine shares. But these amounted to only 10 per cent of the issued stock and the benefit to the holders of the Erskine shares would have been exceedingly small as compared with the total benefit derived by the company from the services. Certainly, the mere fact that an attorney may be a stockholder in a company for which he renders legal services, and will share to some extent in the successful results of his efforts, would not justify an inference that he was donating his services to the company. But the attorneys did not own the stock. Moreover, de Bretteville had a secret intention to deny that the Erskines owned it and to demand that it be surrendered.

In arriving at a proper construction of the findings, we have read the reporter's transcript and all the numerous exhibits. We have not found in the record any statement by any of the attorneys to any representative of the defendant or any statement by the latter to any of the attorneys declaring that the services of the attorneys were to be rendered gratuitously.

It appears from the findings that it was the theory of the defendant that if it was shown that the attorneys would have benefited by their services it would follow that they were working for themselves rather than for defendant, and would not be entitled to compensation. It is an erroneous theory. The question was one of fact, not of law. We cannot see that the findings add up to a finding that the services were gratui-

tous. The court did not state in its conclusion that they were gratuitous.

We might add that we have not overlooked the contention that Morse Erskine 2d admitted that the services were free. On August 20, 1953, he wrote to de Bretteville in part as follows: "As you know, we no longer represent you and have had no dealings with you except gratuitously to render you legal advice which you have declined to follow, as evidenced by the filing of the recent action against the Southern California Gas Company on an account stated on June 13, 1953." We do not construe this as a statement that the services of the attorneys throughout had been rendered gratuitously. As we understand the statement, it refers to the legal advice given at the time of and after the preparation of a complaint against the Southern California Gas Company for declaratory relief relating to an alleged indebtedness of the gas company to Trust Oil for wet gas delivered, and after the employment of other attorneys. As early as January 1953, it was agreed by the Erskine firm and the company that the former would institute suit against the gas company to recover for wet gas delivered, the services of the attorneys to be on a contingency basis. A proposed complaint was submitted to de Bretteville January 27th with instructions that it should be verified and returned to the attorneys. De Bretteville decided not to file the complaint prepared by attorneys, but on June 13th caused an action to be filed against the gas company through other attorneys upon an alleged account stated. Whatever the significance of the August 20th letter it could not cure the inadequacy of the findings.

We are convinced that the judgment must be reversed for inadequacy of the findings to determine the issue of liability. We have discussed the evidence to a limited extent for the sole purpose of determining whether the findings as a whole can reasonably be construed to mean that the court determined that the services of the attorneys were gratuitous. It should not be inferred from our discussion of the evidence that we are undertaking to decide whether it was sufficient to support a finding either that the services were gratuitous or that they were rendered and accepted without any understanding of the parties that they were to be gratuitous.

We have experienced some difficulty in disposing of an appeal that would have presented no serious problem if the trial court had made adequate findings. However, it is not a case in which the judgment should be reversed merely with directions to the court to make additional findings. From

reading the transcript of the evidence we have not learned that any witness was interrogated with respect to any conversation, statement, communication or special circumstance for the purpose of shedding light upon the mutual understanding of the parties or which might have been of assistance to the court in determining whether there was a mutual understanding with respect to the matter of compensation. Upon a retrial, additional evidence may or may not be adduced, but in either event it will be necessary for the court to determine from the direct or indirect evidence, or both, whether the services were rendered under circumstances that imposed a duty upon defendant to pay for them.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied April 2, 1959, and respondent's petition for a hearing by the Supreme Court was denied April 29, 1959.