[Civ. No. 3550. Fourth Dist. May 12, 1947.]

RECOVERY OIL COMPANY (a Corporation), Respondent,
v. R. E. VAN ACKER et al., Defendants; ADA M.
CRAWFORD et al., Appellants.

Franklin B. Hansen for Appellants.

H. H. Bell and Walter H. Hewicker for Respondent.

MARKS, J.—This is an appeal from a judgment quieting plaintiff's title to interests under an oil lease against an assignment of a royalty interest in the proceeds of the oil produced from certain described land in Kern County.

The complaint is in the usual form of an action to quiet title, and the answer of Ada M. Crawford, one of the appellants, sets up her claim to certain proceeds from the oil produced from the property. The only interest of Harry J. Crawford, husband of Ada M. Crawford and the other appellant, seems to be his community interest from the marriage relationship. Some of the defendants filed disclaimers, the action was dismissed as to others, so Mr. and Mrs. Crawford are the only defendants before this court.

The land involved belongs to the United States. On April 21, 1923, an oil and gas prospecting permit was issued to M. A. Knapp by the Secretary of the Interior covering the

property involved in this action as well as other land in Kern County. Extensions of the prospecting permit were granted and, on May 2, 1928, M. A. Knapp and A. Bruce Frame entered into an operating agreement whereby Frame agreed to drill on the property, produce oil if it was found, pay the required royalties to the United States, he being entitled to the remaining production. On November 20, 1928, A. Bruce Frame and his wife executed the following written assignment:

"THAT, referring to that certain Oil and Gas Prospecting Permit, Visalia Serial 010101, M. A. Knapp, Assignee, and referring to the Operating Agreement dated May 2, 1928, executed by said M. A. Knapp to the undersigned, covering the following described premises: (Description.)

"The undersigned hereby assigns, transfers and sets over to N. E. Grable the proceeds from Fifteen per cent (15%) of the oil, gas and other hydrocarbon substances produced, saved and sold from the said premises so covered by said Operating Agreement, (less amount used in operations on the premises) until such time as said assignee shall have received the sum of Twenty Thousand Dollars ($20,000.00) and no more; and upon full payment of said sum this assignment shall terminate and be at an end."

On April 10, 1929, N. E. Grable executed the following instrument:

"IN CONSIDERATION of the receipt, by the undersigned, of TEN and no/100 ($10.00) DOLLARS, N. E. GRABLE, unmarried, of Los Angeles County, State of California, does hereby remise, release, assign and Quitclaim to ADA M. CRAWFORD of Los Angeles County, State of California, the following: This instrument is intended to transfer all right, title and interest now held by the Grantor in and to one half (½) of the interest acquired by the Grantor under that certain instrument dated November 20, 1928, and recorded November 27, 1928, in Book 272, Page 431 of Official Records of Kern County, California, without any warranty or assurance of title whatsoever."

The assignments were duly recorded in the office of the County Recorder of Kern County prior to the time plaintiff acquired any interest in the property so it had constructive notice of them. No consent of the Secretary of the Interior was obtained to either assignment and neither was filed in any land office.

On December 15, 1930, M. A. Knapp was given a lease on the property involved here, as well as on other property in Kern County, by the Secretary of the Interior acting for the United States. On August 17, 1938, plaintiff, through mesne conveyances, became owner of so much of Knapp's former interest in the property involved here, as remained after any legal assignment of portions of it.

If we interpret the findings of fact and conclusions of law correctly, the judgment is based on the finding that the assignment under which defendants claim was not "filed for record purposes in the appropriate district land office of the Department of the Interior of the United States pursuant to the rules and regulations of the General Land Office, or at all"; and the conclusions (1) that whatever rights defendants might have had lapsed because of their failure to so file the assignments, and, (2) that the instrument did not assign any interest in the land but merely constituted a personal promise to pay money out of a particular fund.

The lease contained a provision against assignment, except with the consent of the Secretary of the Interior, which is in accordance with the provisions of law. (See § 187, tit. 30, U.S.C.A. p. 419.) Plaintiff also points to section 192.42d of the Code of Federal Regulations of the United States of America, promulgated by the Secretary of the Interior under authority of statute (§ 189, tit. 30, U.S.C.A. p. 421), which prohibits any lessee from assigning "his lease or any interest therein, whether by operating agreement, working or royalty interest . . ." without the written consent of the Secretary of the Interior and requiring all assignments to "be submitted in triplicate within 30 days from the date of execution. . . ."

These and similar laws and regulations against assignments have been before the courts numerous times. It is the established rule that they are for the benefit and protection of the government. Their prohibition can only be raised by the sovereign, is "available only to the government" and is "not available to an individual." (*Dougherty* v. *California Kettlemen Oil Royalties, Inc.*, 9 Cal.2d 58, at page 88 [69 P.2d 155].) That this assignment was made before the lease was executed is unimportant. Such a situation was before the Ninth Circuit Court of Appeals in the case of *Isaacs* v. *De Hon*, 11 F.2d 943, where it is said:

"Attention is called to section 12-½ of the Regulations of the General Land Office concerning oil and gas permits, promulgated under the authority of section 13 of the Act of February 25, 1920, 41 Stat. 441, Comp. Stat. Supp. 1925, sec. 4640-¼ff. This regulation is as follows:

" '*Assignment of Permits.*—Permits, after being awarded, may be assigned to qualified persons or corporations upon first obtaining consent of the Secretary of the Interior. Mere rights to receive a permit are not assignable.'

"Appellant is in no position to take advantage of this regulation. It may be that plaintiffs will lose the fruits of this litigation by the refusal of the Secretary to approve the assignment of interests in the permit. But appellant is nevertheless held in a court of equity to the obligations he assumed in his grubstake contract."

Defendants argue that the assignment conveyed to them an interest in the real property, a *profit à prendre;* that plaintiff took with notice thereof and subject thereto so that it must pay defendants their share of the value of the oil produced. In support of this argument they cite such cases as *Callahan* v. *Martin,* 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871] ; *La Laguna Ranch Co.* v. *Dodge,* 18 Cal.2d 132 [114 P.2d 351, 135 A.L.R. 546], and *Austin* v. *Hallmark Oil Co.,* 21 Cal.2d 718 [134 P.2d 777].

Plaintiff points out that the instrument before us assigned a portion of the *proceeds* from the oil, gas and other substances produced from the leased property, while that involved in the Callahan case assigned an interest in the oil and gas produced. From this they argue that the assignment can be construed to be no more than a promise on the part of the assignor to pay the assignee a sum of money out of a specific fund and that at most it could only be construed as creating a lien on the oil produced, which lien has long since been barred by the statute of limitations.

The lease in question was for a period of twenty years with the right of renewal under certain circumstances for additional periods so were it necessary to decide the question we might be constrained to hold it was for an indefinite period of time.

However, we do not need to pass upon this question, for the case of *Schiffman* v. *Richfield Oil Co.,* 8 Cal.2d 211 [64 P.2d 1081], is controlling here. The assignment in that case was in legal effect exactly similar to the one before us. As described by the Supreme Court it "assigned to plaintiff stated

percentages of the proceeds to be 'derived and received . . . from the sale . . . of net production' of the well which should remain after payment of expenses.''

In holding that the assignee of the royalty interest of the proceeds was entitled to participate in the *proceeds* from the sale of oil produced as against a subsequent assignee of the lease with notice, the Supreme Court said:

''The right of profit survives the conveyance of the fee in the general estate in the land, and gives the royalty assignee the right to receive his percentage of the proceeds from whoever produces oil on the premises. . . .

''The rights of the holders of royalty assignments to an interest in the proceeds of oil produced by an assignee of the leasehold should not depend on whether the assignment is of a percentage of the oil 'to be produced, saved and sold' as in *Western Oil etc. Co.* v. *Venago Oil Corp.* (218 Cal. 733 [24 P.2d 971, 88 A.L.R. 1271]), *supra,* or is of a percentage of the net proceeds as in the instant case. . . . The royalty assignee's interest in the proceeds must be upheld whether the assignment is of oil to be produced, saved and sold, or of proceeds of such oil.''

There is nothing in the record which enables us to determine whether or not any statute of limitations might be invoked by plaintiff if that question were important here. As far as we can determine from the record, it was not raised in the trial court. The pleadings were silent on it. We do not know when the first well on the leased property was put on production except that this must have occurred before the lease was executed. We do not know when, or if ever, the well or wells produced more than enough to pay the government royalty and more than enough gas or oil to take care of operations on the land. It is impossible to determine when, if at all, defendants could have claimed a payment under their assignment. Also it should be observed that the obligation to pay was a continuing one until defendants had received $10,000.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.