239 F.2d 824
 Herschel BULLEN, Mary H. Bullen, J. C. Hayward and Marian S.
Hayward, Appellants,
v.
B. DE BRETTEVILLE, Treasure Company, Walter B. Scoville and
The Adamant Company, Appellees.
B. DE BRETTEVILLE and Treasure Company, Appellants,
v.
Walter B. SCOVILLE and The Adamant Company, a corporation, Appellees.
 No. 14897.
 United States Court of Appeals Ninth Circuit.
 Dec. 31, 1956.
 
 Hoge & Perry, Fulton W. Hoge, Los Angeles, Cal., for appellants Bullen et al.
 John H. Rice, Nicholas & Mack, Los Angeles, Cal., for appellants de Bretteville, et al.
 Leland J. Allen, Los Angeles, Cal., for appellees Adamant Co., et al.
 Before ORR, McALLISTER, and BARNES, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 We will consider the intervenors' appeal first.
 
 
 2
 Appellants Bullen and Hayward and their respective wives, intervenors, appeal from that part of the judgment which denied enforcement of the 'two for one agreement,' by reason of which they sought payment, out of funds held by the court as a condemnation award, of the sum of $5,000, which they had advanced in equal shares of $2,500 each, for the completion of an oil well, known as Treasure Well No. 8.
 
 
 3
 Treasure Company, a corporation of which de Bretteville was President, as lessee of certain property in Los Angeles County, started drilling for oil many years ago. When money for drilling became scarce, Walter B. Scoville and The Adamant Company, a corporation, came to the rescue, and provided funds to continue drilling. For this they were to receive participating royalties. Again money became scarce, and Mr. Bullen and Dr. Hayward each advanced $2,500, under the terms of a letter dated September 27, 1938, written by Bullen to George Halverson, (an attorney representing Scoville and Adamant); (Exhibit B-1 of Plaintiffs in Intervention) and endorsed by Scoville and Adamant only. By the letter, Bullen and Hayward were to receive one per cent (1%), participating royalties, and, (by the terms of a 'two for one agreement,' combined therein) receive double their investment, or $5,000 each, 'out of the 1st 15% of production from the well.'
 
 
 4
 de Bretteville and Treasure Company neither agreed to, nor knew of, nor were they in any way bound, by the terms of Exhibit B-1.
 
 
 5
 In December, 1938 the well came in. The value of the gross production was over $200,000. In 1941, Scoville and Adamant brought this suit against de Bretteville and Treasure (a) for an accounting, so as to establish the amount of their royalty interest due and payable, if any; and (b) to recover $13,000, which they had advanced. Included therein was the $5,000 put up by appellants Bullen and Hayward.
 
 
 6
 In 1942 the Government brought suit to condemn the property covered by the lease. All parties herein were parties defendant in the condemnation proceedings. An award was made, which included the presumed value of future production. Jurisdiction was retained in order to adjudicate
 
 
 7
 'all adverse claims in or to any part of the award or awards of compensation herein made and the apportionment and distribution of said awards to the parties entitled thereto, and the right, if any, to interest on the awards.'
 
 
 8
 Pursuant to this retention of jurisdiction, the parties commenced proceedings in the same court, but before a different judge, to apportion and distribute the award. Appellants Bullen and Hayward asserted in that action 'a lien or a security interest in the nature of a trust deed upon the interest of lessee, Treasure Company, and upon the royalty interests of Scoville and Adamant Company, under the letter agreement,'. (App. Brief, p. 6.)
 
 
 9
 The trial court found the 'two for one agreement' was between appellants and Scoville alone and that neither Treasure nor Adamant was a party to nor was bound by it.
 
 
 10
 All parties appealed in the condemnation suit. United States v. Adamant Company, 9 Cir., 197 F.2d 1. This court concurred with the trial court that any rights under the 'two for one agreement' were personal, and held that the determination of the interests of the royalty holds was correct, but refrained from allocating the fund, pending the outcome of various accounting suits between the parties. This is such a suit.
 
 
 11
 Appellants Bullen and Hayward duly sought leave, and were allowed, to intervene herein. Their complaint in intervention contained three causes of action. The first was for an accounting to determine any amounts due, by reason of their 1% royalty interest, from past production. The trial court found none due, and there is no appeal on that point.
 
 
 12
 In the second cause of action, intervenors sought payment of the sums due them as 'royalty-holders', in the nature of stockholders. These sums they obtained, and there is no appeal.
 
 
 13
 In the third cause of action, intervenors sought the $10,000 allegedly due under the 'two for one agreement' from both Scoville and Adamant Company and Treasure Company.
 
 
 14
 The District Court held that the 'two for one agreement' created only a personal obligation; that it was not specifically enforceable from or out of the royalty interests of the parties to it; and that it was, therefore, barred by the four year statute of limitations.
 
 
 15
 It was unnecessary, in view of the position taken by the trial court, to come to the question of whether the 'two for one agreement' was binding on both Scoville and Adamant, or only on Scoville, because it was barred as to each. We need to consider here certain questions:
 
 
 16
 I. Does the doctrine of res judicata bar the claim of the Bullens and Haywards?
 
 
 17
 We are confronted at the outset by the threshold question of whether the claim asserted by appellants has already been adjudicated adversely to them.
 
 
 18
 The determination of this issue necessarily entails an examination and comprehension of the decision in the distribution phase of the condemnation proceedings. In that action appellants asserted, as they do now, an interest in the condemnation award arising out of the 'two for one agreement'. The issue was joined, argued, briefed and decided. Judge Westover expressly found that
 
 
 19
 'Bullen and his wife and Hayward and wife have no equitable lien upon the moneys due the parties as hereinbefore set forth from the jury award and verdict.' Finding of Fact XXVIII.
 
 
 20
 He therefore concluded that the enforcement of the agreement was a 'personal matter' between the appellants and Scoville.[1] On appeal, this court referred to the matter thus:
 
 
 21
 'We dispose of the claim arising from the 'Two-to-One Agreement' by stating that the trial court was correct in holding it to be a personal undertaking on the part of Scoville which gave the Bullens and Haywards no interest in the well or production from it.' United States v. Adamant Co., supra, 197 F.2d at page 8.
 
 
 22
 This court devoted considerable attention and space to this aspect of the controversy. The analysis was thorough and we believe, as will forthwith be discussed, correct.
 
 
 23
 The instant suit was heard by the same able judge, Honorable Leon Yankwich, who authored this court's opinion in the prior case. It seems evident that Judge Yankwich shared the view that the question had been conclusively resolved. In a statement made after the case had been submitted, he stated:
 
 
 24
 'However, I am of the view, and I don't want any argument on that point, that so far as Bullen and Hayward are concerned, first that the finding of Judge Westover is determinative of the matter * * *'However, Judge Yankwich did not rest his ultimate decision on res judicata, preferring to face the question on its merits, and in that posture, affirm the reasoning and result of the prior decision. Of course, that does not preclude this court from ruling on this defense. An appellate court may employ any valid theory to sustain a judgment below. Springfield v. Carter, 8 Cir., 175 F.2d 914. The defense is meritorious and warrants discussion.
 
 
 25
 It is well established that the principles of res judicata apply to final orders, judgments and decrees in condemnation proceedings as to matters therein litigated. Carmack v. United States, 8 Cir., 177 F.2d 463; In re Ward, 9 Cir., 61 F.2d 896; Pomona College v. Dunn, 7 Cal.App.2d 227, 46 P.2d 270; City of Oakland v. Buteau, 219 Cal. 745, 29 P.2d 177; Jahr, Eminent Domain, 411 (1953). The sound policy that underlies the doctrine has frequently been delineated at length, and no useful purpose would be served by extensive comment herein. Suffice to say, every person is entitled to his day in court, but no more. The administration of justice requires that there be finality to the judicial process. Few cases present a more eloquent and striking illustration of the necessity for an end to litigation than the one at bar. At least some facet of the problems which ensued from bringing in an oil well have been before the courts for eighteen years.
 
 
 26
 Appellants contend, however, that they are not barred by the former judgment from raising this claim because (1) that judgment was not final as to the share of the award going to the royalty holders, and (2) this court held that the rights of the royalty holders, (and necessarily, therefore, the rights of claimants against their royalty shares,) could not be determined in that action.
 
 
 27
 The fact that several questions were deferred for later decision does not render the doctrine of res judicata inapplicable. A case remanded for further hearing or over which jurisdiction is retained for some purposes may nonetheless be final as to other issues determined. Restatement of Judgments § 41, Comment C, states,
 
 
 28
 'A judgment may be final as to some matters in litigation, although the litigation continues as to other matters.'
 
 
 29
 The claim of the Bullens and Haywards to a share of the condemnation fund was argued and decided. It is a binding adjudication, if the court had jurisdiction to decide the question.
 
 
 30
 Appellants urge that the District Court, sitting in condemnation cases, is a court of limited jurisdiction and that if the court undertook to decide this issue, its decision can have no effect for it was without jurisdiction. In condemnation proceedings, the court sits partly at equity and partly at law. Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95. Its authority is broad. The governing statute, 40 U.S.C.A. § 258a, provides in part:
 
 
 31
 'The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable.'
 
 
 32
 Laying aside the question of whether a party who seeks to invoke the jurisdiction of a court can subsequently challenge the exercise thereof, it can hardly be doubted that the trial court in that action had jurisdiction to settle this issue. Judge Yankwich's opinion does not hold nor suggest that jurisdiction was lacking, and it should not be so construed. The court merely held that it would not be provident to affirm judgment unconditionally as to all parties in view of the then pending litigation between various parties in both federal and state courts. These suits did not involve appellants' claim. They were accounting suits, the outcome of which would determine whether the royalty holders would be entitled to receive the percentage of the award corresponding to their interests.
 
 
 33
 As to intervening appellants no such obstacle existed. It is a basic principle of law that when a parcel of land is condemned, all persons possessing any interest in the property, legal or equitable, may be parties defendant in the proceedings. United States v. Adamant Co., supra; Swanson v. United States, 9 Cir., 156 F.2d 442; United States v. Block, 9 Cir., 160 F.2d 604. Alleging an interest in the property, appellants were entitled to be heard on the matter and if their claim were sustained, to share in the proceeds. United States v. Adamant Co.,supra; Swanson v. United States, supra. A lienholder under California law has a present proprietary interest and such interest may be considered and determined in an eminent domain action. Thibodo v. United States, 9 Cir.,187 F.2d 249, 256. Indeed, it is the duty of the District Court in distributing the condemnation fund to ascertain who is entitled to participate therein. There can be no just compensation, as the Constitution requires, if the fund is dispersed to the wrong persons. Clark v. White, 5 Cir., 185 F.2d 528. As the Supreme Court of California succinctly observed:
 
 
 34
 'It is one of the functions of a condemnation suit to determine as between the defendants, who is the owner of the property and therefore entitled to the compensation for its taking.' Anderson v. Citizens Savings & Trust Co., 185 Cal. 386, 391, 197 P. 113, 116.
 
 
 35
 This task the District Court could and did perform. There is nothing in this court's previous opinion (United States v. Adamant Co., supra.) which vitiates that judicial determination.
 
 
 36
 In any event, even if the matter is not controlled by the doctrine of res adjudicata, appellants could not prevail, because of our determination of the second question; namely:
 
 
 37
 II. Was the $10,000 a personal obligation to pay or was the promise secured?
 
 
 38
 The language of the letter of September 27, 1938, was, as intervening appellants say 'quite simple'. It was
 
 
 39
 'understood and agreed to that the said two for one out of production is to be repaid out of the first 15% of gross production from the said well.'
 
 
 40
 This was no attempt to assign presently as security an existing or future interest in production. It was no more an assignment for security than was the third paragraph, of the same letter, likewise dealing with future events:
 
 
 41
 'In the event the well is a failure or is abandoned * * * it is understood and agreed that * * * Scoville * * * will give the undersigned comparable interests in * * * Wyoming properties * * * the said funds to be repaid two for one from first returns from royalties or production, the said * * * Scoville * * * to give us a contract accordingly.'
 
 
 42
 Clearly when Mr. Bullen wrote the letter, he expected that Mr. Halverson would, sometime in futuro,
 
 
 43
 'draw the necessary assignments and contracts',
 
 
 44
 for that is his plain and unequivocal language. Such 'necessary' assignments and contracts do not appear to have ever been prepared or executed.
 
 
 45
 Almost all the California cases cited by intervenor-appellants involve factual situations where an actual assignment existed, either outright or as security, or where an equitable lien had been created. Western Oil & Refining Co. v. Venago Oil Corp., 218 Cal. 733, 24 P.2d 971, 88 A.L.R. 1271, (2% outright assignment of royalty interest, 10% assigned as security); Callahan v. Martin, 3 Cal.2d 110, 43 P.2d 788, 101 A.L.R. 871; Schiffman v. Richfield Oil Co., 8 Cal.2d 211, 64 P.2d 1081; Recovery Oil Co. v. Van Acker, 79 Cal.App.2d 639, 180 P.2d 436; Id., 96 Cal.App.2d 909, 216 P.2d 483.
 
 
 46
 Appellants assert, further, that the contract should be regarded as an agreement to assign and that, as such, it created a legal interest in oil rights. The only authority they cite is Gavina v. Smith, 25 Cal.2d 501, 154 P.2d 681. The facts of that case readily distinguish it. In that case, the plaintiffs executed an agreement with the defendant wherein the defendant was given an option to acquire an oil and gas lease on certain property. Defendant exercised the option, but the plaintiff refused to sign the lease. The Supreme Court, in accordance with a well-settled rule of law, held that plaintiffs could not quiet title against the defendant's rights because the option to lease created a legal interest just as would the lease itself. Here there is no option. There is but an indefinite reference to documents which may be drawn in the future. Nor is this the sort of agreement where all the necessary terms are agreed upon and all that remains is the execution of a written memorial.
 
 
 47
 'However,' say appellants, even 'if the document is merely an agreement, which did not pass present title, it would, nevertheless, create rights in the property which would be enforceable in a court of equity, and this result could not be avoided merely by designating the agreement as a personal covenant.'
 
 
 48
 Appellant intervenors rely primarily on Dougherty v. California Kettleman Oil Royalties, 9 Cal.2d 58, 69 P.2d 155. That case is not in point. The question there involved was whether an oral agreement could be enforced against an assignee with notice. The court held that full performance took the contract out of the statute of frauds and that it was enforceable against the maker's assignee. The court was not compelled to determine if the covenant was a personal one, for the assignee's knowledge made that question immaterial. No question of a third party's obligations is herein presented. The instant case concerns the rights of a contracting party, not the duties of an assignee. The very question which the court was not required to answer is the critical issue at bar. The Dougherty case simply does not support appellants' position.
 
 
 49
 Appellants make one final valiant effort. They urge that
 
 
 50
 'under the decisions where money is to be paid with funds 'arising from' the production of land, or is to be 'paid out' of such production * * * the document as a matter of law, is to be interpreted as giving a security interest in the land and the production therefrom.'
 
 
 51
 We cannot agree.
 
 
 52
 We agree with Judge Yankwich, writing in the appeal in the condemnation case, with respect to the claim the Adamant group had as a lien against Treasure, that an equitable lien may be established, "in the absence of an express contract, * * * out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing. One may by manifest intent and agreement create a security for the discharge of his obligation * * *". (197 F.2d 10.)
 
 
 53
 But here that manifest intent is lacking in the document relied upon. Such claimed 'agreement' is supported neither by the relationship of the parties, nor by the circumstances of their dealing subsequent to their entering into the relationship.
 
 
 54
 There must be something more than a contract which has been breached before a court can impress an equitable lien upon a specific fund. Jamison Coal & Coke Co. v. Goltra, 8 Cir., 143 F.2d 889, 893, 894, 154 A.L.R. 1191; Cleveland Clinic Foundation v. Humphreys, 6 Cir., 97 F.2d 849, 850, 856; United States v. Adamant Co., supra, 197 F.2d at page 10.
 
 
 55
 The 'two for one agreement' was not understood by Mr. Bullen as constituting a lien on any particular interest, but was to come out of total production. (Tr. 146)
 
 
 56
 'Q. And the two for one was not chargeable against any particular interest, was it? A. I think that's right.'
 
 
 57
 'Q. That's right. In other words, it was not chargeable to Mr. Scoville's personal interest, nor to Mr. Bodkins', nor to yours, nor to Mr. Hayward's, isn't that right? A. That's right.'
 
 
 58
 'Q. But it was to come out of total production. A. That's right.'
 
 
 59
 'Q. And you understood that fully, didn't you? A. Certainly,' (balance of answer stricken by court).
 
 
 60
 We conclude that the promise to pay was personal only.
 
 
 61
 III. Is the Statute of Limitations applicable?
 
 
 62
 If this court believes, with the lower court, that the 'two for one agreement' is a mere personal covenant, there then is no question but that, as appellants concede, 'it (the complaint) is barred by the four year statute'.
 
 
 63
 IV. Is the Adament Company also a party to the 'two for one agreement'?
 
 
 64
 This question becomes (again as appellants point out, in their brief) immaterial, because of the four year statute of limitations, applicable if we find the 'two for one agreement' was personal and did not create a security interest in production from the well. This we have so found and decided.
 
 
 65
 For the reasons herein stated, the decision of the District Court denying appellant-intervenors recovery on their claim is affirmed.
 
 
 66
 We next consider the appeal of de Bretteville and Treasure Company.
 
 
 67
 The second but not cross appeal, is by defendants named above, who were sued by Scoville and Adamant Company in two causes of action expressed in an amended and supplemental complaint. From the judgment on the first cause of action, ordering an accounting by Treasure Company, no appeal is taken. The second cause of action sought $26,000 damages for violation of an oral 'two for one agreement', to cover $13,000 advanced by Scoville.
 
 
 68
 The judgment was for the amount advanced, $13,000 in favor of both Scoville and Adamant Company against both de Bretteville and Treasure Company.
 
 
 69
 Appellants strenuously urge four specifications of error:
 
 
 70
 I. That the only cause of action plead was on behalf of Scoville alone.
 
 
 71
 II. That no Findings of Fact support the judgment against de Bretteville personally, in that (a) there are no sufficient findings; (b) there are no findings of contractual liability; (c) there are no findings of wrongdoing; (d) there are no findings of moneys advanced by plaintiffs to defendants.
 
 
 72
 III. There is no finding of any admission of a defendant's obligation to repay.
 
 
 73
 IV. If there were admissions, the statute of limitations would bar recovery.
 
 
 74
 As will hereinafter be discussed, there was evidence to justify the court's finding that somebody was entitled to recover the $13,000 advanced, to put the well on production, from someone. But who is entitled to recover, and who must pay?
 
 
 75
 Both Scoville and Adamant pressed for an accounting in the first cause of action, but the second cause of action contained in the Amended and Supplemental Complaint alleges merely that Scoville alone advanced the $13,000; that he has received no reimbursement; that an accounting was necessary to ascertain if there are sufficient funds to repay him; that he was entitled to be repaid; and he alone asked for a money judgment. It is true, however, that defendants in filing their answer to the Amended and Supplemental Complaint, denied 'that plaintiffs herein, or either of them' advanced money to ready the well for production, except for the sum of $11,500.00 put up under the terms of a compromise agreement asserted 'as in * * * defendant's first affirmative defense alleged'. They also denied that $13,000 'was to be returned to the said Walter B. Scoville, or to either of said plaintiffs'.
 
 
 76
 Nevertheless, it seems that judgment has been rendered in favor of a party who did not sue. Appellee, Adamant Company, contends that the defect is cured by (1) the original pleadings; (2) a stipulation incorporated in the complaint; or, (3) the evidence. There also appears to be a fourth possibility, aider by subsequent pleading.
 
 
 77
 The first suggested remedy has no merit. It is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent. Nisbet v. Van Tuyl, 7 Cir., 224 F.2d 66; Meyer v. State Board of Equalization, 42 Cal.2d 376, 267 P.2d 257; 71 C.J.S., Pleading, 321. Once amended, the original no longer performs any function as a pleading and cannot be utilized to aid a defective amendment.
 
 
 78
 Nor does the stipulation assist appellees. The stipulation was entered into during the so-called Vickers judgment case. The primary purpose and effect of the stipulation was to exclude from the issues litigated in that action the controversy relating to the $13,000 claim. Furthermore, and most importantly, there is no mention nor reference in the stipulation as to the source of the money. There is nothing contained therein that would indicate that Scoville and Adamant Company were entitled to payment.
 
 
 79
 The evidence upon which appellee relies is a listing contained in the Parker Audit, reading 'Cash Receipts: Percentage Holders Loan, $13,000.00'. The mere designation in the plural is hardly persuasive proof that the money was owed to two parties. It could well be simply a matter of accounting practice to list in the plural. Nor do the admissions made by appellants' attorney, Mr. Bodkin, in the original hearing of this accounting suit before Judge Peirson Hall sufficiently cure the defect.
 
 
 80
 Appellee is thus compelled to resort to the answer to the Amended and Supplemental Complaint. It is recognized in federal procedure that a subsequent pleading of an adversary, if not thereafter denied, may cure a defect in a prior pleading. United States v. Morris, 23 U.S. 246, 6 L.Ed. 314; Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567; Albertson v. Federal Communications Commission, 87 U.S.App.D.C. 39, 182 F.2d 397. This principle applies to substantive as well as procedural omissions. Albertson v. Federal Communications Commission, supra. For example, in Cole v. Ralph, supra, an ejectment action, the complaint failed to allege possession by the defendant. The Supreme Court held that the answer supplied the necessary allegation. However, no case has gone so far as to hold that a party-plaintiff may be brought into the suit by a defendant's answer. This is not a mere technical error. It remains fundamental even under the simplified and liberalized Federal Rules of Civil Procedure, 28 U.S.C.A. that the complaint should serve to notify the opposing party of the complainant's identity and the general nature of the subject matter of the suit. The Rules are still designed to prevent the defendant from being misled as to a factor basic to the litigation. They are not a trap for the unwary.
 
 
 81
 Were appellants led astray by the failure to assert a cause of action in favor of Adamant? Time and time again, the complaint refers solely to Scoville. His name is mentioned five times; the Adamant Company's not once. The reference in the answer to both plaintiffs is brief. Certainly, it is difficult to say that the trial was conducted on the assumption that both Scoville and Adamant Company were suing on this alleged obligation. In fact, there was no evidence introduced on this matter at the trial. The District Court based its judgment solely on admissions it found in the record. In this context, without additional proof that the parties did in fact regard Adamant Company as a partyplaintiff, doubt should be resolved in favor of appellants. The cursory reference to both plaintiffs in the answer cannot be regarded as adequate to rectify this elemental error. The rules of pleading in federal courts are to be liberally construed, but they have not yet reached the point where judgment can be granted a party who has not used.
 
 
 82
 Was the judgment against de Bretteville, personally, as well as against Treasure Company, proper? Here there is no question of pleading but of proof.
 
 
 83
 The record in this respect is not crystal clear.
 
 
 84
 A careful consideration thereof fails to disclose any evidence which would support a personal judgment against de Bretteville. Although the judgment states that the $13,000 constitutes 'reimbursement to plaintiffs for moneys advanced by them to defendants,' the District Court specifically found that 'Walter B. Scoville did advance the sum of $13,000 to defendant Treasure Company.' Finding of Fact IV. The court initially ruled that evidence relating to the alter ego theory should be excluded as immaterial,[2] but later permitted the evidence to go in.[3] However, it made no finding as to alter ego. Moreover, the court did expressly state that 'no funds in which the plaintiffs or any of the other parties to the action have any interest are now in the possession of the defendants or either of them.' (Tr. 93) Yet, the court said that was the basis upon which it would hold de Bretteville personally liable.
 
 
 85
 Thus, it appears that the award against de Bretteville personally is inconsistent with the Findings of Fact. Where conflict exists between findings of fact and conclusions of law, in the absence of evidence to support the conclusions, it is settled that the former controls. This court is not bound to respect conclusions of law which do not rest properly on the facts so found. Campana Corp. v. Harrison, 7 Cir., 114 F.2d 400. The judgment against de Bretteville cannot stand.
 
 
 86
 Were there admissions in the record that the amount of $13,000 was due?
 
 
 87
 The decision of the lower court refers to 'the sum of $13,000 advanced by Scoville (payment of which is admitted in the record and is reflected in the audit).' (Emphasis added.) (Tr. 97) The court observed at the conclusion of the trial that:
 
 
 88
 'I am also of the view that under no circumstances could Scoville have cut himself in on a two for one agreement, when he was one of the interested parties, but the only question as to the $13,000, there being no evidence in this case to show that it had been advanced, and the only point I want briefed is whether there are admissions in the record showing that that amount is due. * * *' (Tr. 238)
 
 
 89
 Unfortunately, neither the Findings of Fact nor the Conclusions of Law entered by the District Court state precisely the particular admissions upon which the judgment is grounded. A study of the record reveals at least three possible bases: the stipulation in the Vickers judgment case; the comments of counsel before Judge Hall; and the Parker Audit.
 
 
 90
 It cannot be doubted that the primary objective of the stipulation was to defer the issue, not resolve it. However, in agreeing to exclude the question, counsel could consistently therewith admit the amount of the alleged debt, if it were a debt. Mr. Bodkin, counsel for appellants in that action, declared.
 
 
 91
 'I object to the introduction of any evidence concerning the $13,000.00 which ultimately went into that fund for the completion of the well. * * *'
 
 
 92
 Counsel's statements before Judge Hall have already been alluded to. Mr. Bodkin declared on several occasions during the course of these proceedings that the sum of money involved was $13,000. (Tr. 24, 33, 95, 96)
 
 
 93
 He said that 'these moneys (were advanced) from time to time, which were used for labor and necessary other expenditures * * * to assist in (putting the well on production), but it was not sufficient to do so, however, because there were many other expenses which had to be paid.'
 
 
 94
 The listing in the Parker Audit has been noted previously. Apparently, this constitutes the basis for the District Court's decision as to the sum due. We cannot hold that the decision was clearly erroneous.
 
 
 95
 The court construed the legal effect of the advance to be one for which repayment was necessary, rather than a contribution. We concur with that interpretation.
 
 
 96
 The District Court stated at the conclusion of the trial that if these were admissions in the record showing that the sum of $13,000.00 is due appellees, 'then the statute of limitations has not run.' (Tr. 238) The understanding that the money advanced was to be repaid was reached in 1938. The original Complaint in the instant suit was filed on September 10, 1941. Therefore, appellees' claim is not barred by the applicable four year statute of limitations. California Code of Civil Procedure, § 343.
 
 
 97
 Appellees' Brief declares that appellants omitted significant portions of the trial record in designating the record on appeal. The charge is a serious one. But if appellees felt aggrieved, they should have filed a petition under Rule 75(b) of the Federal Rules of Civil Procedure to have a supplemental record brought before this court. They did not do so. Their failure to follow the prescribed procedure precludes them from questioning the composition of the record. For purposes of this appeal, it must be assumed that the record accurately relates the events that transpired in the court below.
 
 
 98
 The decision of the District Court is modified in accordance with the views hereinbefore set forth, and in all other respects, is
 
 
 99
 Affirmed.
 
 
 
 [1]
 Conclusion of Law VII
 
 
 [2]
 'I will stop further inquiry into the alter ego theory on the ground it is not material to the issues in this case. Furthermore, the evidence in this record and the testimony before the court shows that this corporation had an individual existence, and, therefore, this court would have no right to disregard that corporate existence in a collateral lawsuit
 If you want to impugn its existence, go into the State Court and have it done.'
 (Tr. 209)
 
 
 [3]
 The court stated that no alter ego theory had been pleaded, but Mr. Allen, counsel for appellees, pointed out it was in 'the first complaint filed in this case.' The court then stated that if Scoville, et al., relied on the alter ego theory, he would first require Scoville and Adamant to dismiss their action against Treasure Company, and if they could not prove alter ego, 'the corporation will be out.' And, the court concluded: 'The alter ego theory has no business in this accounting, so there is no further offer to be made along that line.' (Tr. 211) The court subsequently said:
 The Court: I am going to withdraw the ruling and I am going to let you put in the facts * * *. I will allow you to go into the alter ego theory.'
 Mr. Allen: Yes, but when we get through it is found that there are monies that should have been accounted for, and instead of being in Treasure's pocket, Treasure Company's, they are in his pocket, that is the only angle we are after.' (Tr. 211, 212)
 'The Court: But he is an individual defendant, and if he has money that belongs to the corporation, even though, under the power of attorney he has the right to collect the money, he has no right to keep it, so that having made him an individual defendant, the judgment of this court can reach him regardless of the alter ego theory.'
 'Mr. Allen: That is all I want, then. I will just ask him one question in reference to * * *.'
 'The Court: So if you want to prove the alter ego theory, go ahead and prove it.'
 'Mr. Allen: That is all I want, your Honor, that ruling, and that statement satisfies me.' (Tr. 212)
 'Mr. Allen: Here is my position, your Honor: When you state that any funds that he should have that belonged to the Treasure Company we can reach, I have no use in going further into alter ego.'
 'The Court: All right. That is what this lawsuit is about.'
 'Mr. Allen: That is all I care about.'
 'The Court: You have sued him in his individual capacity, and an accounting being an equitable proceeding, the court may adjust accounts, and shuffle them, and reshuffle them, and tell this man to do this, and the other man to do that.'
 'Mr. Allen: That is all I care about. I am perfectly satisfied with that ruling.' (Tr. 219)