**RIVER GAS CORPORATION & Texaco Exploration And Production, Inc., Plaintiffs,**

v.

**Karen PULLMAN, F–L Energy, Corp., Defendants.**

**Civil No. 2:96–CV–0209 B.**

United States District Court, D. Utah, Central Division.

Feb. 28, 1997.

Frederick M. MacDonald, John F. Waldo, Pruitt, Gushee & Bachtell, Salt Lake City, UT, for Plaintiffs.

Steven E. Clyde, Amanda Seeger, Clyde, Snow & Swenson, Ronald C. Barker, Salt Lake City, UT, Stanley M. Davis, Watertown, S.D., for Defendants.

### MEMORANDUM OPINION AND ORDER

BENSON, District Judge.

Plaintiffs River Gas Corporation ("RGC") and Texaco Exploration and Production, Inc.

("TEXEP") (collectively "Plaintiffs") initiated this action against the defendants Karen Pullman ("Pullman") and F–L Energy, Corporation ("F–L") (collectively "Defendants") to quiet title to certain interests in a Federal oil and gas lease and an existing well located on the lands covered by the lease more specifically defined and identified as the "Subject Property." Currently before the court is Plaintiffs' motion for summary judgment claiming that their assignment is valid and binding because they received Bureau of Land Management ("BLM") approval while the defendants were previously denied approval on their assignment of the same gas lease.

A hearing on this motion was held before the Honorable Dee V. Benson on January 9, 1997. Frederick M. MacDonald represented the plaintiffs and Mitchell R. Barker represented the defendants. Having reviewed the memoranda submitted by the parties and having considered the oral arguments from counsel, being fully apprised, and for good cause appearing, the court makes the following findings and enters the following Memorandum Opinion and Order.

## BACKGROUND

The Subject Property in this case was originally leased to Harold L. Anderson by the United States on September 1, 1971. By Assignment of Record Title effective October 1, 1971, and later approved by the BLM, Harold Anderson assigned the lease to Webb Resources, Inc. On December 11, 1979 Webb Resources Inc. merged into Sohio Petroleum Company ("Sohio") and the BLM approved the merger on June 5, 1980. Sohio changed its name to BP Exploration, Inc. and subsequently to Tex/Con Oil and Gas Company ("Tex/Con") on March 15, 1989. The BLM approved the corporate restructuring and succession on June 22, 1990. On April 14, 1992 the BLM issued its approval of Tex/Con's merger into PG & E Resources Company ("PG & E"). On August 9, 1990 Tex/Con purported to assign 100% of the record title in the lease to Karen Pullman, but the BLM did not approve the assignment and Defendants did not make any effort to resubmit the assignment for approval. Subse-

quently, PG & E reassigned 100% of the record title in the lease to River Gas of Utah, Inc. ("RGU"). This assignment along with the transfer of operating rights was approved by the BLM on July 1, 1994. RGU merged into plaintiff RGC effective January 1, 1995 and the BLM gave its approval on March 3, 1995. On July 1, 1995 the BLM approved the assignment by RGC to plaintiff TEXEP of 50% of its record title in the lease along with 50% of its operating rights.

## DISCUSSION

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The issue before the court is whether disapproval of an assignment by the BLM and the subsequent approval of the same assignment to a different party will control in an action to quiet title between private parties. Plaintiffs argue that they are entitled to judgment because the BLM approved its assignment of the gas lease after the defendants' assignment was disapproved and that an assignment is not valid without BLM approval. Plaintiffs correctly assert that the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. § 187a (1994), governs this type of assignment because the lease in question was originally granted to a private party by the United States government and is thus a government lease subject to the MLA. In pertinent part, § 187a reads, "[A]ny oil or gas lease issued under the authority of this chapter may be assigned or subleased, as to all or part of the acreage included therein, subject to final approval by the Secretary." Thus, Plaintiffs argue that according to the statute's § 187a "approval requirement," there

can be no assignment of the rights to a lease unless the BLM gives its approval.

Defendants contend that they should still be allowed time to perfect their assignment regardless of the passage of time and the subsequent perfection of an assignment to another party. They cite *Norbeck v. Crawford*, 254 Mont. 256, 836 P.2d 1231 (1992), for this proposition based on its holding that parties are permitted to resubmit their assignment for BLM approval after the initial denial, *id.* 836 P.2d at 1233–34,[1] but Defendants assume too much. Thus, while Defendants correctly assert that an assignment that was denied BLM approval could still be perfected where no further assignment had subsequently been approved, *id.* at 1234, they wrongly conclude that the assignment can be perfected after an assignment has been made to another party and approved by the BLM. It simply does not follow that an invalid assignment takes precedence over a valid assignment when the latter received the required government approval. Because the interests in the lease remain with the assignor until BLM approval is obtained, Pullman never had an interest in the government lease. Therefore a valid assignment was made to Plaintiffs' predecessors free and clear of the invalid assignment. *See id.* at 1234 (obligation remains with the assignor).[2]

It is well established that a party must receive the approval of the Secretary of the Interior in order for an assignment of a government lease to be valid, 30 U.S.C. § 187a; *see also Oasis Oil Co. v. Bell Oil &*

*Gas Co.*, 106 F.Supp. 954 (W.D.Okla.1952) (holding that the assignee did not have a right to monies attributable to a well, because after the BLM disapproved his assignment the well remained the assignor's property),[3] and that an assignment does not actually occur until approval is granted. *Norbeck*, 836 P.2d at 1234. Significantly, Congress expressed its view on the necessity of BLM approval when it codified the language of the *Oasis* holding. 30 U.S.C. § 187a (1994) (confirming the concept that responsibility remains with the assignor, as if no assignment existed, until an assignment is approved). Since the original assignment to Pullman was disapproved by the BLM, it was never a valid assignment and the lease interest remained with the assignor.[4]

Defendants also refer to *Recovery Oil Co. v. Van Acker et al.*, 79 Cal.App.2d 639, 180 P.2d 436 (1947), in arguing that the statutes and administrative regulations like those in the MLA are for government use and not individual parties. *Id.* 180 P.2d at 437. While *Van Acker* may appear on its surface to substantiate the defense's argument, Defendants have erred in its application. The law to which the *Van Acker* case refers was established in *Isaacs v. De Hon et al.*, 11 F.2d 943 (9th Cir.1926). There, De Hon brought suit against the defendant, Isaacs, to obtain interests in an oil claim. On appeal, Isaacs argued that De Hon was not qualified to hold an oil claim or prospecting claim

---

1. Although allowing the assignee the right to procure approval from the BLM after fifty-seven years, *Norbeck* recognized that the property had remained with the assignor the entire time, the assignee had never paid rentals on the property, and the original attempt to perfect the assignee's interest was rejected by the BLM. *Norbeck*, 836 P.2d at 1233–34. Accordingly, the assignee was not entitled to any past profits achieved by use of the property because there was never a valid assignment and therefore no change of title.

2. Defendants further point out that in the *Norbeck* case, the court made reference to the fact that the assignee never paid the rentals, but Pullman did in this case. *Id.* at 1234. While this fact may raise another issue for which the defendants are entitled to relief, the fact that the plaintiffs have allowed Pullman to stay on the land and pay rentals up until this point does not

affect the issue of whether the BLM's denial of one assignment is dispositive in a quiet title action over a government lease when the BLM validated an assignment to a subsequent party.

3. The *Oasis* court did not have to consider whether the assignee could assert his rights to future profits from the well under the assignment if he could obtain BLM approval because the assignee disclaimed all interests in the property. *Oasis*, 106 F.Supp. at 957.

4. Defendants point out that the disapproval by the BLM was based on an insufficient bond. They claim that the amount of the bond was proper and that the BLM made a mistake. However, the Defendants never appealed that decision. Moreover, the motives behind the BLM disapproval are not at issue before the court and it is sufficient that the assignment was denied.

because he was not a citizen of the United States and therefore not a qualified person under section 12½ of the Regulations of the General Land Office (1920) (regulation similar to the pertinent language in § 187a). *Id.* at 944. Apposite to the instant case, the Court of Appeals stated that

> Appellant is in no position to take advantage of this regulation. It may be that plaintiffs will lose the fruits of this litigation by the refusal of the Secretary to approve the assignment of interests in the permit. But appellant is nevertheless held in a court of equity to the obligations he assumed in his grubstake contract.

*Id.* The court did not even consider the issue of whether BLM approval could be used as proof of a valid assignment. The court merely held that an individual may not use the regulation as a defense to the validity of an assignment based on lack of citizenship. Moreover, the court's holding that there can be no valid assignment or transfer of interests without BLM approval concurs with *Isaacs* dicta referring to the "fruits of litigation" being lost if the plaintiffs did not receive the Secretary's approval. *Id.*

The key element drawn from these cases is the need for BLM approval in order to have a valid assignment. *See* 30 U.S.C.A. § 187a; *see also Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 70, 86 S.Ct. 1301, 1305, 16 L.Ed.2d 369 (1966) ("The Secretary, who must approve all assignments before the lease obligations or record titles are shifted finally, is entirely free to disapprove assignees however valid their assignments may otherwise be."). Applying this reasoning to the instant case, it is as if the original assignment of the lease rights to Pullman never happened once the BLM rejected her application for approval. Nevertheless, Defendants may have had the opportunity to renew their application provided that the property stayed with the original assignor and had not already been assigned to another party to whom approval was granted. However, the assignor did assign the property in question

to another assignee (RGC) and RGC received the BLM's approval. Accordingly, Plaintiffs' motion for partial summary judgment is granted and a quiet title decree shall be entered in their favor. Still remaining is Defendants' breach of contract counterclaim.[5]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is granted and a quiet title decree is entered in their favor.

IT IS HEREBY ORDERED.

---

5. This alleged contract purportedly allowed Defendants time to correct any defects provided they conformed with the terms of the agreement. Defendants contend that they continued to pay rent, continued to operate the lease, and complied with all other obligations of the lease. It remains to be determined whether RGC was aware of such an arrangement between PG & E and Defendants and took their assignment subject to this agreement.